## Mechanics' Bank *against* Gorman.

An assignment in trust for creditors is good, although it excludes unreleasing creditors and reserves a trust of the surplus for the debtor.

To affect land in the hands of a purchaser, a judgment must have been not merely simultaneous with but anterior to the conveyance; and the precise time at which the judgment was entered must be shown by less than record proof.

ERROR to the District Court for the city and county of *Philadelphia*.

The Mechanics' Bank of the city and county of Philadelphia against William T. Gorman. This was an amicable action of ejectment, in which the following case was stated in the nature of a special verdict, and subject to a writ of error.

Jacob Gilliams and wife, on the 21st day of September 1839, executed and delivered to John M. Odenheimer a general assignment, in due form, of all his estate, including the premises for which this ejectment is brought, in trust for creditors as set forth therein. The said assignment was duly acknowledged before an alderman of the city of Philadelphia by the proper parties, at a quarter after ten o'clock in the forenoon of said day. Said assignment was duly recorded on the 4th day of October 1839, which assignment is in words and figures following (prout assignment). Security was regularly given by the said assignee, who under said assignment sold the said premises in this writ mentioned to William T. Gorman, defendant, and conveyed the same to him by deed in due form of law, on the 31st day of August 1840. The defendant took possession thereof under said conveyance (which had been duly recorded), and still holds the same. The said plaintiffs, creditors of said Jacob Gilliams, the assignor, issued process against him in this court to September Term 1839, No. 241, returnable to the first Monday of September 1839; and a copy of the instrument of writing sued upon having been duly filed, judgment was duly entered thereon on the regular judgment day of that month, viz., the 21st day of September (the date of said assignment), between the hours of eleven and twelve o'clock A. M. of that day, for want of an affidavit of defence, and the damages were assessed on the 1st day of October 1839, at $758.76. Writs of *fieri facias* and *venditioni exponas* were afterwards duly issued upon said judgment by the said plaintiffs, who, after regular condemnation under the said *fieri facias*, subsequently purchased the said premises at sheriff's sale under said *venditioni exponas*, paid the purchase money, and received a sheriff's deed duly acknowledged, and recorded the same.

If upon this case the court shall be of opinion either

[Mechanics' Bank v. Gorman.]

1. That the judgment so obtained by the plaintiffs against Jacob Gilliams after eleven o'clock of the 21st day of September 1839, took precedence and secured a lien on said premises, in preference to the said general assignment by Jacob Gilliams, executed and acknowledged before eleven o'clock on the same day, or,

2. That the said assignment is void in respect to the above-named plaintiffs, by reason of the terms of a provision for a release, and the resulting trust for the assignor as contained and expressed therein,

Then judgment to be entered in favour of the plaintiffs, to be released, however, on payment of their said judgment and costs. If otherwise, then judgment in this case is to be entered for the defendants, subject as above stated to a writ of error.

### ASSIGNMENT.

This Indenture, made the 21st day of September 1839, between Jacob Gilliams of the city of Philadelphia, dentist, and Ann his wife, of the first part, and John M. Odenheimer of the same city. of the second part. Whereas, the said Jacob Gilliams is entitled to and possessed of certain estate, but owing to his misfortunes in business is unable to pay his various creditors, but is desirous of distributing said estate among them according to their several equities: Now this Indenture witnesseth, that the said Gilliams, as well for and in consideration of the premises as of the sum of one dollar to him in hand well and truly paid by the said John M. Odenheimer, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, assigned, transferred and set over, and by these presents doth grant, bargain, sell, assign, transfer and set over unto the said John M. Odenheimer, his heirs, executors, administrators and assigns, all the estate real and personal of him the said Jacob Gilliams, and his rights, credits and expectancies of whatsoever nature or kind, and whether situate, lying, and being due and owing in the State of Pennsylvania, or elsewhere, to have and to hold the same with the appurtenances unto the said John M. Odenheimer, his heirs, executors, administrators and assigns, to his and their only use and behoof for ever, in trust, nevertheless, and to, for and upon the trusts, intents and purposes hereinafter set forth, viz.: That the said party of the second part shall, by public or private sale, at discretion, and by collections, suits or compromises, likewise at his discretion, convert all the assigned property, as speedily as may be, into cash, and as the proceeds are from time to time realized (after paying all the expenses of this trust, including the cost of this instrument), pay the creditors of the said party of the first part their respective demands, in the order of classes hereinafter enumerated, without preference as between individuals of the same class. Said classes to be paid according to their se-

VIII. — 39　　　　2 A *

[Mechanics' Bank v. Gorman.]

quence, so that no subsequent class shall receive anything until all those prior to it are paid in full.

First Class. All those creditors of the said Jacob Gilliams whose respective claims do not now without abatement exceed the sum of $700. Also all sums due or to grow due for professional services rendered and to be rendered to the assignor. Also the debt due to Lewis Gilliams, amounting to $2000 or thereabouts.

Second Class and lastly. All the residue of the creditors of the said party of the first part indiscriminately.

And should any part or portion of said trust and property or funds remain after fully complying with the trusts aforesaid, then the said party of the second part shall deliver over and reconvey the same unto the party of the first part, his heirs, executors, administrators and assigns. *Provided*, that no creditor of the said second class shall be entitled to participate in the said estate, who shall not, on or before twelve o'clock, noon, of the 25th day of October 1839, execute and deliver to the said Jacob Gilliams a full and entire release from all demands.

And the more effectually to enable the said party of the second part to accomplish and perform the trusts aforesaid, the said party of the first part doth hereby nominate, constitute and appoint the said party of the second part his true and lawful attorney, for him and in his name to ask, demand, sue for, recover and receive all such sum and sums of money, debts, goods, wares, dues, accompts and other demands whatsoever, which are now due and payable to him, or which are now due and may hereafter become payable. Giving and granting unto his said attorney by these presents, his full and entire power, strength and authority in and about the premises, to have, use and take all lawful ways and means for the purposes aforesaid, and upon the receipt of any such debts, dues, and sums of money, acquittances and other sufficient discharges to make, seal and deliver.

In testimony whereof, &c.

City of Philadelphia, ss.

This 21st day of September 1839, personally appeared before me (one of the aldermen of the city of Philadelphia), the within named Jacob Gilliams and Ann his wife, and John M. Odenheimer, and severally acknowledged the within written indenture to be their act and deed, and desired that the same might be recorded as such, the said Ann Gilliams being of full age and by me privately examined apart from her said husband, the contents thereof being made known to her, declaring that she freely executed the same without any compulsion from her said husband.

In testimony whereof, I have hereunto set my hand and seal the day and year last above written. Acknowledged at a quarter past ten o'clock, A. M.

                                        P. CHRISTIAN.

[Mechanics' Bank v. Gorman.]

The court below gave judgment for the defendant on the case stated.

1. The court below erred in deciding that the judgment obtained by the plaintiff against Jacob Gilliams, as aforesaid, did not take preference and secure a lien on the premises for which the ejectment was brought, in preference to the general assignment by Jacob Gilliams, executed and acknowledged as aforesaid.

2. In deciding that the assignment made by Jacob Gilliams was not void in respect to the plaintiff, by reason of the terms of a provision for a release, and the resulting trust for the assignor, as contained and expressed in said assignment.

3. In giving judgment on the case stated in favour of the defendant.

*V. L. Bradford,* for the plaintiff in error.
*Haly,* contra, was confined to the first error.

The opinion of the Court was delivered by

Gibson, C. J.—The rule of the common law, which rejects fractions of a day in determining the priority of liens, was restricted in *Metzler* v. *Kilgore* to judgments; and the reasons given for it show that it could not be otherwise. Judgments of the same date were held to start from the same point of time, not only because the common law principle of relation to the first day of the term had been altered no further than to let in record proof of the true day of rendition and not of the hour and minute, but because the date of a judgment being matter of record and triable only by itself, could not in general be established, falsified or explained by inferior evidence. Judgments of the same date were therefore admitted to come in together by force of a necessity, which did no injustice in putting them on a footing as to mere technical advantages resting on no principle of actual justice, but on an accidental interpretation of the statute of Westminster the second. But the precise time of delivering a conveyance, like the precise time of delivering a *fieri facias,* being provable by evidence *in pais,* it follows that the necessities of justice, like the necessities of the law which required us to exclude inferior evidence in *Metzler* v. *Kilgore,* require us in this instance to admit it. The principle, in that case, brought in the judgments together; but in this, would exclude the assignment entirely. It is unnecessary to say that such a result would be contrary to natural right. It would be impossible to put a judgment and a conveyance on a footing of equality, not only because it would be impracticable to determine the relative proportions coming to each, but because they are inconsistent and irreconcilable. The one is a security which incumbers the property in exclusion of everything subsequent to it : the other, a conveyance excluding everything to which it is anterior ; and they are therefore incapable of standing together. To affect land

[Mechanics' Bank v. Gorman.]

in the hands of a purchaser, a judgment must have been not merely simultaneous with, but anterior to the conveyance; and as an indispensable measure of justice, the precise time at which the judgment was entered must be shown by less than record proof.

The argument that a judgment whose date in contemplation of law covers the whole day, is necessarily anterior to a conveyance at an intermediate point of the same day, is too subtle to be solid. The conclusion attempted would not be borne out by the most fanciful effect of the legal fiction; for it might be possible to deliver a conveyance so exactly at the stroke of twelve as to leave no room for an intervening lapse of any appreciable portion of time. But justice is not to be dispensed on principles so artificial, where it can be avoided. When judgments bear the same date, they must necessarily come in together; but between a judgment and a conveyance, actual priority must be shown like any other fact.

The remaining point was agreed in *Livingston* v. *Bell*, (3 *Watts* 198) by sustaining an assignment in trust to pay debts, though it included unreleasing creditors, and reserved a trust of the surplus for the debtor. The reason is that the property is not less accessible to those creditors when a second time in the hands of the debtor, than it was before he parted with it. It is enough, however, that the point is no longer open.

Judgment affirmed.