## TARVER v. ROFFE.

1. A deed of assignment made by a debtor, to secure certain persons as his sure-
ties is not void, because the condition is imposed that they shall have no remedy
by sale, under its terms, until they have first paid the security debt.

2. Nor is such a deed void on account of an imperfect description of some of the
chattels conveyed by it, though it may be doubtful how far a creditor will be af-
fected by such a description, when he seeks to condemn the property imperfectly
described.

3. Where a legal effect can be given to a deed, and property is not placed beyond
the reach of a creditor, it is not void *per se.*

Writ of error to the Circuit Court of Franklin.

CLAIM interposed under the statute, by Tarver, to certain
slaves, levied on as the property of John M. Lewis, at the suit
of Roffe.

The claimant made title to the slaves in controversy, through
a deed of trust purporting to be tripartite, to wit—by John
M. Lewis, of the first part; Tarver, the claimant, of the se-
cond part; and D. B. McClune, D. Carrol, A. S. Christian, C.
T. Barton, B. Hudson, B. Harris, and B. Reynolds, of the third
part.   It recites, that Tarver, McClune, Carrol, Christian and
Barton, are the sureties of Lewis, on two several debts due to
the Branch Bank at Huntsville, upon which judgments were
obtained in the Circuit Court of Madison, on the 29th October,
1839—one of them for $7,103, and the other for $616, besides
costs.   Also, that McClune and Carrol are sureties of Lewis for
another debt of $1,525, payable in instalments as directed by the
relief act of 1837 : that Harris, and Reynolds, are also sureties
for Lewis, on three notes or bonds dated 20th December, 1838,
payable to John F. Pride and others, for the several amounts
of $1,286, due 1st December, 1839, $1,000 at the same time,
$2,286, 1st December, 1840 ; that Tarver and Hudson are in-
dorsers for Lewis on bills of exchange—one for $2,019, dated
2d April, 1839, at six months, and the other for $2,000, dated

110

9th. September, 1839, drawn on and accepted by Forsyth & Limerick. It also recites, that Lewis is willing and desirous to secure, indemnify, and save harmless all and every of the persons before mentioned from their liabilities as his sureties or indorsors. It then in consideration of the premises, and the further sum of five dollars, paid Lewis, by Tarver, conveys to the latter certain lands and slaves, which are specifically described. Also, twenty-five head of horses and mules, then in possession of Lewis; two hundred head of hogs, four wagons, two carts, farming and plantation untensils; all the household and kitchen furniture then in possession of Lewis, and the then ungathered crop of cotton, and corn, raised that year by Lewis; and declares that the conveyance is upon the trusts, and for the uses and purposes following, that is to say:

1. That Tarver, the trustee, shall permit Lewis to remain in possession of the lands, slaves, &c., until the happening of the following events, to wit: until some one of the persons herein before mentioned, as security or indorser, shall request a sale thereof, and then upon the further trusts, that Tarver, or some one by him specifically authorized, in writing, shall, upon request being made, sell so much, or such part of said land, slaves, and other property, as may be necessary to pay the debt on demand for which such person making the request, is, or shall be bound, provided that no person shall be authorized to compel a sale of any part of said property, until judgment is obtained against him, and until he has paid the same as security or indorser of Lewis. The said Tarver, or his assigns, authorized by the deed to sell, shall in all cases give public notice, at least thirty days, in some newspaper of the time, and place of sale, and shall sell at public auction for cash; and the proceeds arising from such sale shall be paid to the discharge of the debt or demand, which the person making the request is entitled to, by reason of his having paid money as security.

2. It is expressly provided and agreed by Lewis, that in case any arrangement shall be made, and entered into, between himself and the Branch of the Bank of the State of Alabama at Huntsville, whereby the judgments mentioned shall be satisfied, by a renewal of the original notes, and the giving of other personal security, that the said Tarver, &c., shall hold the pro-

perty, as well for the benefit of any additional security that may be added, as those whose names may be hereafter added to the said debts, notwithstanding any form the said debts may undergo by renewal, &c.

3. It is further agreed, that the said Lewis, in all cases where Tarver is security or indorser for him, on any of the debts mentioned, the said Tarver, &c., may sell for the purpose of indemnifying himself and his co-securities or indorsers, at any time after judgment is rendered against him, and from the moneys arising from such sale, the said Tarver, &c., shall pay off and discharge said judgment. The deed is dated the 18th of September, 1840, and was executed by Lewis and Tarver. The execution and consideration being proved, the Court charged the jury, the deed was fraudulent on its face and void, to which the claimant excepted, and here assigns the charge as error; also that a judgment is rendered against the sureties on Tarver's claim bond for the costs of suit.

McCLUNG and E. D. TOWNES, for the plaintiff in error, made the following points:

1. Fraud arising on the face of a deed is a dry question of law, and must be determined by inspection, without the aid of other matters extrinsic to the deed. [Swift v. Fitzhugh, 9 Por. 63; Mordecai v. Tankersley, 1 Ala. Rep. N. S. 102.]

2. Possession remaining with the grantor until a default in the condition of the deed, so far from being conclusive, is not even evidence of fraud, as it is consistent with the deed. [Johnson v. Cunningham, 1 Ala. Rep. 258; Magee v. Carpenter, 4 Ib. 474.]

3. A deed becomes fraudulent, only in consequence of an illegal reservation of benefit to the grantor, hindering and delaying creditors. [Foster v. Goree, 4 Ala. Rep. 440; Magee v. Carpenter, Ib. 474.]

4. The ungathered crops of corn and cotton, would have passed with the fee of the lands, and their specific conveyance evidences fairness, and not fraud. The inaccuracy of description of the personal chattels, or rather the want of a specific description, cannot affect the validity of the deed. At most, this, as well as the comparative value of the estate conveyed, to the debt secured, was proper to be left to the jury.

5. It will probably be said, the deed trammels the rights of the sureties and indorsers, instead of protecting them, and that this connected with the reservation of possession to the grantor, must hinder and delay the principal creditors. This, if true, would be a badge of fraud. But the sureties, *at law*, have no other rights, than to compel suit against their principal, and to force him to refund actual payments. Neither of these rights are impaired. Besides, Tarver, the principal surety, is authorized to sell for the benefit of himself, and co-sureties, whenever judgment is obtained against him, and the deed shows two such already rendered. Others of the debts were not due, and the deed itself looks to, and contemplates the extension and renewal of the chief debt—thus bringing the deed within the principles of Johnson v. Cunningham, 1 Ala. Rep. 258, and McGee v. Carpenter, 4 Ib. 474.

6. That a debtor may protect sureties, or prefer particular creditors, is conceded by all adjudications ; and the limitations of this right are well settled in Gázzam v. Poyntz, 4 Ala. Rep. 374, Ashurst v. Martin, 9 Porter, 566 ; and there is nothing in these decisions to invalidate this deed.

W. Cooper and J. A. Nooe, for the defendant in error, insisted :

1. Where the validity of a deed is in question, it is one of law for the Court to pronounce on the contract disclosed. [Richardson v. Hazzard, 1 S. & P. 137.]

2. Though a debtor may prefer one creditor to another, by an assignment of his estate, upon trust, and in good faith, yet if the assignment be made without the consent of the creditor, and reserves to the debtor a portion of the property for the support or benefit of himself, and be otherwise arbitrary and unjust to the creditors generally, it will be fraudulent in the whole. [Toulmin v. Buchanan, 1 Stew. 67; Brennan v. Oliver, 2 Stew. 47 ; Murray v. Riggs, 15 Johns. 570; Austin v. Bell, 20 Johns. 442 ; Gazzam v. Poyntz, 4 Ala. Rep. 374.]

3. A deed of trust can be sustained, only, when the property conveyed by it, is *bona fide*, conveyed for the payment of the creditor, without stipulating for any benefit to the debtor, and where the equitable interests of the creditors are fixed by the assignment itself. [Ashurst v. Martin, 9 Porter, 566 ; Gesler

Huffner, 1 Iredell, 498 ; Barnum v. Hempstead, 7 Paige, 568 ; Groves v. Wakeman, 11 Wend. 203; 2 Kent's Com. 412 ; Mc-Kee v. Cousins, 5 Conn. 449 ; Richardson v. Hazzard, 1 S & P. 156.]

4. Where possession remains with the vendor, it is not sufficient as against creditors, that the consideration is *bona fide;* to rebut the presumption of fraud, it must appear, that the sale was not made to hinder or delay creditors. [Martin v. White, 2 Stew. 162; Ayres v. Moore, Ib. 336 ; Miller v. Thompson, 3 Porter, 196 ; Ashhurt v. Martin, 9 Porter, 566.]

5. The intent to delay and hinder creditors is manifest, from the absurd pretext, that it is for the indemnity of sureties, when at the same time it contemplates no relief to them, until they have actually paid the money. The effect of this is, that the grantor will reap the benefit of the usufruct, until that event transpires, and in the mean time the actual creditor is held at defiance. The same intent is evidenced by the uncertainty of description in the chattels conveyed. No creditor could distinguish the articles conveyed, from others of the same kind remaining with the debtor.

6. In Wiswall v. Ticknor, 6 Ala. Rep. 178, it is said, the possession of the mortgagor after the law day, is a badge of fraud ; and here it is expressly stipulated, not only that the debtor shall remain in possession until the debts become due, but the sureties have been compelled to pay them out of their own money. No surety under these terms would ever be active, and thus the debtor is left in possession paying no one.

GOLDTHWAITE, J—The subject of voluntary conveyances by debtors, has been recently, so fully discussed, and so often examined, by this Court, that the case before us may be determined by a brief reference to principles, considered as already established.

The first inquiry here is, as to the object contemplated by the grantor, in making this assignment. From the recitals of the deed, we ascertain, that the persons named as the third parties, as well as the trustee, are sureties for the grantor, either for debts due at the execution of the deed, or then running to maturity. The professed object is to indemnify and secure these sureties, but the debtor stipulates that none of them except Tar-

ver, shall have a remedy under it, until they have advanced
their own money for his indebtedness.   This certainly is a sin-
gular provision—but, if they have assented to it, the provision
itself furnishes no ground to declare the deed void.   As sure-
ties at law, they can scarcely be said to have any rights at law,
unless that of calling on the creditor to put his demand in suit—
Clay's Dig. 532, § 6—that of having a judgment rendered in
his favor against the principal when sued without him ;—Ib. §
8 ; and that of requiring the sheriff to levy first on the proper-
ty of the principal when both are sued, (Ib. 206, § 23,) are so
to be considered.   In equity, his only redress seems to be by
suit to compel a payment.   [1 Story's Eq. § 327, and cases
there cited.]

It is evident that in none of these modes, does the surety ac-
quire a specific lien upon the estate of his principal, until a
judgment is rendered, or decree passed ; therefore when the
principal proposes to secure him by a specific appropriation of
his property, the terms upon which this shall be made, are as
much the subject of stipulation, and assent, as they are between
mortgagor, and mortgagee.   No objection to the validity of the
deed arises out of this stipulation.   The question is made as to
the period, when this deed became operative, so as to bring it
within the influence of the decision of *Elmes* v. Sutherland,
(supra,)—even if the circumstances of the execution by one of
the beneficiaries, does not *per se,* make it operative to the ex-
tent of his liabilities.

2. If the contest here was in relation to the personal effects
conveyed by the deed, under the imperfect description, to
which our attention is called, it would deserve great consid-
eration, whether a creditor not preferred could be affected by
it, for no means are afforded by which the property thus de-
scribed, can be known or separated from other things of the
same kind retained by the debtor.   But this imperfect descrip-
tion, we think, has not the effect to avoid the deed in other res-
pects ; as is it does not necessarily create the presumption of
fraud, and even if it did, is capable of explanation by extrinsic
proof.   It is held in many cases, that whenever a description
or designation of the person, or thing intended, is applicable in-
differently to more than one subject, extrinsic evidence is

missible to prove, which of such subjects was intended. [3 Cowen and Hill's notes, 1362.]

3. As to the effect of the deed to hinder and delay creditors, in consequence of tying up the property from sale, at the suit of unpreferred creditors, until after a request to sell by the sureties indemnified by the deed, this was very well fully examined in Dubose v. Dubose, supra; where we endeavored to show, that such a consequence did not result, as any creditor by suit in equity, might compel a sale, whenever his execution is returned no property. Besides this, if the possession continued with the debtor under the terms of the deed, many cases determine, that this possessory interest is the subject of levy and sale. [Purnell v. Hogan, 5 S. & P. 192; McGregor v. Hall, 3 Ib. 399; Perkins v. Mayfield, 5 Porter, 182; Williams v. Jones, 2 Ala. Rep. 314; Bank v. Willis, 5 Ib. 770.]

In addition to these remedies, there is another applicable to the principal creditors to whom the debts are due, the sureties to which were intended to be indemnified by this deed. It is held in many cases, that where a surety is indemnified by his principal, the creditor may resort to the fund thus appropriated for his indemnity. [Wright v. Morley, 11 Vesey, 22; 2 Story's Eq. 656, § 639.] Whether a creditor would be entitled to this remedy, without first exhausting his legal remedies against principal and surety, is a subject which we need not examine.

We have thus endeavored to show, that this deed is harmless as a means to perpetrate fraud, and the consequence is, that it cannot be pronounced void upon inspection.

Judgment reversed and cause remanded.