## MILLER *vs.* STETSON & CO.

[CREDITORS' BILL IN EQUITY TO SET ASIDE DEED AS FRAUDULENT.]

1. *Validity of deed of trust for benefit of specified creditors.*—A deed of trust, by which a debtor conveys a portion of his property to a trustee, for the benefit of certain specified creditors, is not rendered fraudulent and void as against other creditors, by a provision to the effect that, after payment in full of the secured debts, with the costs and charges attending the execu-

tion of the trust, the residue of the proceeds of sale of the property conveyed shall be paid over to the grantor or his order : such a provision is not a reservation "in trust for the use of the party making the same," within the meaning of section 1550 of the Code, since the law itself would imply such reservation in the absence of an expresss stipulation in the deed.

APPEAL from the Chancery Court at Tuskaloosa.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by M. S. Stetson & Co., Oliver, Jones & Granger, Wm. A. Hanney & Co., Bates, Taylor & Co., J. Burnside & Co., W. Letchford & Co., and the administrators of Joseph Brewster, deceased, as judgment creditors of Thomas Miller, with executions returned "no property found;" and sought relief against a deed of trust, executed by said Miller, on the 21st September, 1854, while some of the complainants' actions at law were pending against him, and after the rendition of some of their judgments; which deed was made an exhibit to the bill, and which was alleged to have been "made with intent to hinder, delay and defraud said complainants, with other creditors of said Miller not therein named, of their lawful debts," and to be therefore void; and the bill further alleged, "that said deed is a general assignment, by which a preference of payment is given to the creditors therein named, over the other and remaining creditors of said Thomas Miller." The prayer of the bill was "for such relief as complainants may be entitled to on the case made by their bill of complaint, and as may be consistent with the justice and equity of their case."

The deed of trust in controversy was executed on the 21st September, 1854 ; was signed by both the grantor and the trustee, one J. H. Dearing; recited an indebtedness by the grantor to the several secured creditors, whose debts amounted in the aggregate to nearly $8,000, and were either past due or fell due within six months after the date of the deed; and conveyed to the trustee the grantor's stock of goods, of which a schedule was annexed to the deed, his storehouse, and residence in the city of Tuskaloosa, on the following trusts : "That the said

party of the second part shall take immediate possession of said lots and parcels of land, with their appurtenances, together with the goods, wares and merchandise aforesaid; and, with all proper and convenient speed, proceed to sell the said goods, wares and merchandise, at either public auction or private sale, as in his judgment may be best calculated to bring the largest sum of money, and thereby secure the best interests of the said parties of the third part; and, out of the proceeds of such sale, from time to time, as he may receive the same in sums sufficient, after first paying the costs hereof, distribute to the said parties of the third part, *pari passu*, without preference or priority, but in proportion to the respective amounts then due to them respectively, in discharge of their respective demands against the said party of the first part, as far as the same may go; and so proceed with said goods, wares and merchandise, until the whole proceeds shall be applied in the manner stated, if the same shall be required, for the purpose of paying off and discharging all of said debts that may remain due. And also upon this further trust, that the said party of the second part shall, at his discretion, sell the said lots or parcels of land and premises, one or both, with their respective appurtenances, at such time and place as he may appoint for that purpose, at public auction, for cash, having given sixty days notice of the time and place of sale, in one or more newspapers printed in the city of Tuskaloosa; and, out of the proceeds of such sale, after paying the costs and charges thereof, pay over the same in discharge of the debts of the said parties of the third part which may remain due, if sufficient to discharge the same; but if not, then that the same be paid to each party respectively in proportion to the sum then due, without preference or priority; and after the payment of the said several claims of the parties of the third part, and the costs and charges of managing said trust in the manner set forth, the said party of the second part shall then pay whatever amount of money, if any, there may be remaining in his hands, to the said party of the first part, or his order. It is hereby agreed, that the said party of the

second part may employ such clerks and agents, to aid him in the execution of said trust, as he may require, and pay to him or them such reasonable compensation as may be agreed upon."

The chancellor held the deed void on its face, as to the complainants, on account of the provision directing the trustee to pay over the surplus proceeds of sale to the grantor. He therefore rendered a decree for the complainants, ordering an account, &c.; and his decree is now assigned as error.

ORMOND & NICOLSON, for the appellant.—1. It is settled by numerous decisions of this court, that the validity of a deed of trust is not affected by a clause providing that, after payment of the secured debts, the surplus, if any, shall be repaid to the grantor; and the reason assigned is, that the law would imply such a trust if it had not been declared in the deed.—Hindman v. Dill, 11 Ala. 689; Ravisies v. Alston, 5 Ala. 258; Johnson v. Cunningham, 1 Ala. 262; also, the cases cited in Hindman v. Dill, *supra.* There is no opposing or conflicting decision on this point. The case of Grimshaw & Brown v. Walker, 12 Ala. 101, turned upon the fact, that the secured creditors of the second class, before they could receive the benefits of the deed, were required to execute releases; not upon the provision that the surplus, if any, should be paid to the grantor.

But the chancellor supposed, that section 1550 of the Code changed the law which had been settled by these repeated decisions; and in this, it is insisted, he erred. The Code does not take away from a debtor the right to secure one or more of his creditors by a *bona-fide* deed or mortgage: on the contrary, it allows him to secure one or more of his creditors, provided he does not exact from them a release, (Code, § 1555;) or, if it be by a general assignment, provided he does not give one class of creditors a preference over the others. Section 1550 is manifestly aimed at secret trusts, or trusts not apparent from the instrument itself. The terms, " deed of gift," "transfers," "verbal or written," unless thus interpreted, cease

to have any meaning. If the trust was declared, the instrument would cease to be a deed of gift, a transfer, or an assignment, but would be a trust. If the trust was openly declared to be for the benefit of the grantor, the statute would doubtless apply; but debtors, desiring to conceal their property by making a pretended gift, do not thus openly proclaim their intention; and if they did, it would not require the aid of this statute to enable their creditors to reach the property. The object of this statute was, to accomplish in respect to personal property what the statute of uses had already done for real property; to put the deed out of the way, whether fraudulent or not, and enable creditors, existing or subsequent, to pursue their legal remedies unembarrassed by it. This view is strengthened by the fact, that real property is not mentioned in the statute; and it seems to have been designedly omitted, because it was already provided for by the statute of uses. This construction makes the statute instinct with life and meaning, while the construction put on it by the chancellor renders it meaningless and unnecessary, or makes the legislature guilty of the absurdity of declaring an instrument entirely void, on account of the formal insertion of a provision, which the law itself would imply whenever there was any thing for it to operate upon, and which, when the deed itself so clearly shows that there can be no surplus, must be regarded as mere matter of form.

It is said, that our statute is copied from the New York statute, which was construed in Goodrich v. Downs, 6 Hill, 438, to apply to a deed similar in its terms to this. But that case shows that other statutory provisions, parts of the New York system of laws, entered into and controlled the decision. It was decided, too, as shown by the opinion of Judge Bronson, during the controversy between the supreme court, on one side, and the court of errors and the legislature on the other; the latter maintaining that fraud was a question of fact for the jury, while the former contended for what has been called fraud in law. It was, moreover, denied to be law by this court, in Hindman v. Dill, *supra;* has never been followed in New

York, except in the case of Griffin v. Barney, 4 Comstock, 365, which was decided by the same judge; and has been overruled, in effect, by several subsequent decisions of that State, both in the supreme court and the court of errors.—Ely v. Cook, 18 Barbour, 612; Leitch v. Hollister, 4 Comstock, 211. See, also, as to the construction of similar provisions, Halsey v. Whitney, 4 Mason, 222; Dana v. U. S. Bank, 5 Watts & Serg. 250; Beck v. Burditt, 1 Paige, 305; Cross v. Bryant, 2 Scam. 26; Conkling v. Carson, 11 Illinois, 503; Austin v. Johnson, 7 Humph. 191; Rahn v. McElrath, 6 Watts, 151.

2. The other positions urged against the validity of the deed are untenable. It does not appear that it conveyed all the grantor's property, nor that he was in failing circumstances; nor does it confer on the trustee an implied authority to sell the goods on a credit.—Frow v. Smith, 10 Ala. 571; Dubose v. Dubose, 7 Ala. 235; Ticknor v. Wiswall, 9 Ala. 305; Kellogg v. Slanson, 15 Barbour, 56; Whitney v. Krows, 11 Barbour, 198; Nicholson v. McEwen, 21 Barbour, 65; Clarke v. Fuller, 21 Barbour, 128; Bellowes v. Patridge, 19 Barbour, 176; Abercrombie v. Bradford, 16 Ala. 560.

E. W. PECK, contra.—The deed of trust is fraudulent and void in law, for the following reasons:

1. Because it was made by a debtor who was in failing circumstances.

2. Because it is not an asignment of certain specified property, for the benefit of a named creditor; but is an assignment of a large portion of his property—all his tangible property, all that could be reached by an execution at law, all his stock in trade, which was the basis of his business operations—for the benefit of a large class, but not all of his creditors.

3. Because it authorizes the trustee to dispose of the personal property at private sale, and, by fair implication, on credit, and by retail.

4. Because the real estate is not to be sold until after the personal property has been exhausted. The language employed is fairly susceptible of no other construction.

While the trustee is proceeding to sell the goods, in the gradual manner contemplated by the deed, the real estate is necessarily placed beyond the reach of the unsecured creditors, who are thereby hindered and delayed in the collection of their debts.

5. Because it authorizes the trustee, at his discretion, to sell the lots conveyed, "one or both," at such time and place as he may appoint. The sale of the real estate is not only postponed until after all the personalty is exhausted, but is only to be sold then at the discretion of the trustee, after an unreasonably long notice. In the exercise of this discretion, the trustee may advertise and sell one lot, after the expiration of not less than sixty days; and if the proceeds of sale prove insufficient to pay all the remaining debts, again advertise for sixty days before he can sell the other.

6. Because it contains an express trust for the benefit of the grantor, contrary to section 1550 of the Code, in that it directs the surplus proceeds of sale, after paying the secured debts and charges, to be paid over to him, "or his order." A provision directing the surplus to be paid to the grantor, omitting the residue of the clause, is clearly within the statute, as shown by the decisions cited below in reference to similar statutes. The superadded words, giving him a power of disposal by "order," create an express trust very different from that which, it might be contended, would otherwise result by operation of law; and enable him to set his other creditors at defiance, no matter how diligent they may be, by an order secretly given to a friend or simulated creditor.

In support of the foregoing positions, the following authorities are relied on: Gazzam v. Poyntz, 4 Ala. 374; Grimshaw & Brown v. Walker, 12 Ala. 101; Brown v. Lyon, 17 Ala. 659; Woodhouse v. Masher, 9 Barbour, 255; Nicholson v. Leavitt, 2 Selden, 510; Pierson v. Manning, 2 Michigan, 445–55; Goodrich v. Downs, 6 Hill, 438; McLean v. Button, 19 Barbour, 450; Leitch v. Hollister, 4 Comstock, 211; 21 Pick. 185; Massey v. Baldwin, Vermont Reports of 1854; Barney v. Griffin, 2 Comstock, 370.

RICE, C. J.—The complainants are judgment creditors of Thomas Miller. Executions have issued under their judgments, and been returned "no property found." The demands on which their judgments are founded, existed before the said Miller executed the deed, a copy of which is made an exhibit to their bill; but were not reduced to judgment until after it was executed. The deed was executed since the Code went into effect. The question for our decision is, whether, upon the foregoing facts, taken in connection with the contents of the deed, the chancellor was authorized to pronounce it void as to the complainants; in other words, whether the deed shows anything on its face, which, in judgment of law, renders it void as against such creditors of the grantor as the foregoing facts prove the complainants to be.

The deed on its face appears to a deed of trust, intended as a security for the payment of the debts specified in it. It does not require of any creditor provided for by it any release, or the performance of any other act impairing his existing rights. It does not purport to convey all the property of the grantor, nor to provide for all his creditors. It vests the property mentioned in it, to-wit, certain city lots and goods, in the trustee for the benefit of certain designated creditors, not including the complainants; and directs him to convert the same into money, and apply it absolutely and without reserve to the payment of the specified debts, equally and without any preference or priority of any one of them over another; and it then directs the trustee to pay to the grantor, "or his order," the surplus, if any, which may remain in his hands, after payment of the debts, costs and charges, expressly provided for, and legally payable by the terms of the deed.

The direction to pay the surplus to the grantor, "or his order," is, in legal effect, the same as a direction to pay it to him. Under our law, his right to the surplus, under such a deed, is as transferable by him, when the direction of the deed is that the trustee shall pay it to him, as when the direction is to pay it to him "or his order." In either case, his transferree might sue in his own name for it.—Code, §§ 2129, 1530.

Section 1550 of the Code provides, that "all deeds of gift, all conveyances, transfers, and assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, are void against creditors, existing or subsequent, of such person." Under that section, and the New York exposition of a statutory provision of that State just like it, made before our Code was adopted, the chancellor pronounced the deed herein above mentioned to be void as to the complainants, because he supposed that the provision it contains as to the surplus is an express trust for the use of the grantor, within the meaning of the section of the Code above copied. He cites and relies on Goodrich v. Downs, 6 Hill's (N. Y.) Rep. 438.

The common-law right of a debtor, to give a preference to certain creditors over all others, has been restricted, but not destroyed, by the Code. Whatever may be the extent of his embarrassments, he may, even under the Code, devote a part of his property to the equal, absolute and unconditional payment of certain creditors, in preference of all others, by *a deed of trust* executed for the *sole* purpose of securing and paying the honest debts of those creditors. To that extent, at least, he has the power of preference. Regarding the deed now under consideration as an exercise of that power by the grantor, there is nothing on its face which carries the power beyond mere preference, or shows that it was made, in whole or in part, "in trust for the use of" the grantor. The insertion of the express provision, that the surplus remaining after payment of the debts, costs, and charges, expressly provided for and legally payable by the terms of the deed, should result to the grantor, was a mere work of supererogation. If that provision had been omitted, the same surplus would have resulted to him, from the other provisions of the deed, by mere operation of law. The deed means the same thing, whether it have or have not that provision; and cannot be rendered invalid as to any creditors by its insertion, unless there be some law in this State which, in effect, declares that the power of a debtor to prefer certain creditors over all others cannot be exer-

cised by any deed of trust which does not, on its face, direct that the surplus which may remain, after the discharge of the debts of the preferred creditors, shall be applied to the payment of some debt or demand for which the grantor is liable to some other person, and shall not result to the grantor until every debt or demand for which he is liable to others shall have been discharged!!!

It is certain there is not in this State any law which makes any such direction essential to the validity of the exercise of the power of preference, when that power is exercised, as in the present case, by a deed of trust which makes a simple and unconditional appropriation of a part of the debtor's property to the equal payment of the honest claims of the preferred creditors designated by the deed. When that power is exercised by *such a deed*, a reservation to the grantor of the surplus remaining after the payment of the debts, costs, and charges, provided for and legally payable by its terms, whether expressed on its face or implied by law, is not "a trust for the use of the" grantor, within the meaning of section 1550 of the Code, and does not render the deed void as to any creditor of the grantor.—Hindman v. Dill, 11 Ala. R. 689, and cases therein cited; Brown v. Lyon, 17 *ib.* 659; Burgin v. Burgin, 1 Iredell, 453; Hafner v. Irwin, *ib.* 490; Leitch v. Hollister, 4 Comstock, 211; Hall v. Dennison, 17 Vt. R. 310; Mechanics' Bank v. Gorman, 8 Watts & Serg. 304; Estwick v. Cailland, 5 T. R. 420. It is the mere legal result of the other provisions, which were inserted in the deed in the exercise of the clear legal right of the debtor to prefer creditors. It does not render the surplus less accessible to unpreferred creditors, when a second time in his hands, than it was before he parted with it; nor does it prevent them, if they have obtained judgment and a return of no property on the execution, from intercepting the surplus before it gets back into his hands, and subjecting it to the satisfaction of their demands, at any time after the execution of the deed.—Dubose v. Dubose, 7 Ala. R. 235; Tarver v. Roffe, *ib.* 873; Frow v. Smith, 10 *ib.* 571; Graham v. Lockhart, 8 *ib.* 9; Hodge v. Wyatt, 10 *ib.* 271; Floyd v. Morrow, 26 *ib.* 353. The judgment

of the law, pronounced upon the mere face of such a deed, is, that the deed was made, not in trust for the use of the grantor, but for the purpose of preferring the creditors designated in it; and that the reservation as to the surplus contained in it is not one of the purposes for which it was made, but is perfectly consistent with the honest purpose of the deed, (to-wit, the preference of the designated creditors,) and is the mere expression of an incident which legally results from the accomplishment of that purpose by the other provisions of the deed.

We shall not undertake to say, that the decision in Goodrich v. Downs, *supra*, was one "not fit to be made" nor followed in New York. Each State is entitled to have a system of its own for the protection of the rights of creditors. The statutory provision of New York, of which it is said section 1550 is a literal or substantial transcript, is but part of the system of that State. It was proper for the courts of that State to put such a construction upon that particular provision as would make it harmonize with other parts of the system to which it belonged. It is but fair to presume, that to produce that harmony, the New York courts found it necessary to make and to adhere to the decision in Goodrich v. Downs. But, however that may be, there is nothing in our system which would justify our courts in holding, that the insertion in *such a deed* as that exhibited in this case, of a mere reservation as to the surplus, which the law itself would imply, rendered the deed void as to the creditors of the grantor, as a deed "*made in trust for the use of the*" grantor, within the meaning of section 1550 of the Code. That section is but part of our system; and, in expounding it, our courts must be controlled by other parts of our system, and the meaning of the phrase, "trust for the use" of the grantor, as settled by decisions of our own courts made before the adoption of the Code. Long before the Code was adopted, it was firmly settled by our decisions, that the question whether a reservation as to the surplus was "a trust for the debtor's use," depended on the nature and character of the other provisions of the deed in which the reservation was found; that in deeds of trust,

entirely different in the nature and character of their provisions from the one exhibited in this case, such a reservation was a trust for the debtor's use, (Grimshaw v. Walker, 12 Ala. R. 101; West, Oliver & Co. v. Snodgrass, 17 Ala. R. 549;) but that in deeds of trust similar in the nature and character of their provisions to the one exhibited in this case, such a reservation was not a trust for the debtor's use.—Hindman v. Dill, 11 Ala. R. 691, and the cases therein cited. And in Hindman v. Dill, which was decided several years before the Code was adopted, this court very clearly indicated its unwillingness to sanction Goodrich v. Downs, even as a proper exposition of the statutory provision of New York. The language then employed by this court, in reference to Goodrich v. Downs, was as follows: "We are not prepared to say that, under the circumstances disclosed in that case, we should have considered the trust as one for the debtor's use." Under such circumstances, the courts of this State must understand our legislature to have adopted section 1550 in the sense in which our courts by former decisions had indicated they would understand it, rather than in its New York sense; and this view is greatly strengthened by the other provisions of the Code in relation to the rights of debtors and creditors.

We have examined all the objections urged against the validity of the deed exhibited with the bill; and we are fully convinced, and therefore decide, that there is nothing *on its face* which renders it void as to the complainants, or authorizes any court to declare it void as to them. Shackelford v. P. & Bank, 22 Ala. R. 238; Abercrombie v. Bradford, 16 Ala. 560; Tarver v. Roffe, 7 Ala. 873; Dubose v. Dubose, 7 Ala. 235; P. & M. Bank v. Clarke, 7 Ala. 765; Pope v. Wilson, 7 Ala. 690; Evans v. Lamar, 21 Ala. 333; Graham v. Lockhart, 8 Ala. 9; Brown v. Lyon, *supra;* Burgin v. Burgin, 1 Iredell, 453; Hafner v. Irwin, *ib.* 490.

The chancellor erred in deciding contrary to the law as herein above declared. For that error, his decree is reversed, and the cause remanded. The appellees must pay the costs of the appeal.