# Ladley *versus* Creighton.

1. Under Act of April 27th 1855, ₰ 8 (mortgage of leaseholds), recording such mortgage with a *copy* of lease and referring to the lease recorded with a former mortgage, *held* to be a substantial compliance with the act.

2. The mortgage was by the lessee of his term of years under a lease of a mill and the machinery mentioned in a schedule attached; after the execution of the mortgage more machinery was put into the mill. *Held*, that the latter machinery passed by a sale under the mortgage.

3. After the recording of the mortgage, the lease and machinery were sold under fi. fa.'s against the lessee, the purchaser took possession, and assigned them; subsequently the lease and machinery were sold under the mortgage, the assignee of the first purchaser not being made a party to the scire facias or having notice of the judgment on it. In replevin by the purchaser under the mortgage against the assignee of the first purchaser, *Held*, that the latter having notice of the mortgage by the record, and being precluded from no defence against its validity in this suit, want of notice of the scire facias, &c., was immaterial.

4. The defendant's title being adverse to the mortgage, its validity depended on the validity of the mortgage.

5. As between judgments entered on the same day there is no priority; but as between a judgment and deed priority depends on proof.

6. The record in the mortgage-book is evidence of a mortgage.

February 6th and 7th 1872.   Before Agnew, Sharswood and Williams, JJ.   Thompson, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 263, to January Term 1871.

On the 21st of July 1866, James Creighton issued a replevin against Joseph Ladley for certain machinery. The defendant gave a claim-property bond and retained the goods.

The cause was tried November 23d 1870, before Thayer, J.

Sarah Hirst being owner of the " White Mill " in Philadelphia, on the 25th of January 1858, leased the premises to William Divine and William Tomlinson for ten years; the lease was acknowledged October 14th 1859. William Divine afterwards sold his interest in the lease and the machinery to Tomlinson. Tom-

linson then mortgaged the term. On the 1st of March 1862, Mrs. Hirst and Tomlinson acknowledged a *copy* of the lease and assignment before an alderman, and the whole, mortgage, lease, &c., were recorded March 19th 1862. On the 25th of Jan. 1864, Tomlinson mortgaged the term and the machinery (a schedule of which was attached), to Hugh Creighton and Joshua Peirce to secure the payment of $10,000, and with the mortgage the lease of the " White Mill" was delivered to Peirce, one of the mortgagees. At the execution of the mortgage there was annexed to it a copy of the lease and Divine's assignment to Tomlinson; both the lease and the assignment were recited in the mortgage; and it was also recited that the lease had been recorded with the former mortgage, referring to the record; also that a copy of the lease and the assignment were attached to the mortgage;—this mortgage with the copy of the lease and assignment attached were recorded under the Act of April 27th 1855, section 8, Pamph. L. 369, 1 Br. Purd. 486, pl. 140.

After making the mortgage, new machinery was put into the mill by Tomlinson.

To December Term, 1865, writs of fieri facias were issued against Tomlinson, under which the lease and all the machinery were sold by the sheriff, and the purchasers afterwards assigned their right to Joseph Ladley the defendant, who took possession. On the day of the assignment Creighton and Peirce issued a scire facias on their mortgage on which they obtained judgment, and under it, on June 26th 1866, Tomlinson's interest was sold to the plaintiff; for the recovery of the machinery this action of replevin was brought.

On the trial the plaintiff offered in evidence the record of the proceedings under the mortgage of Creighton and Peirce and their purchase. The offer was objected to, admitted, and a bill of exceptions sealed. He offered in evidence the record of the mortgage, copy of lease, &c., it was objected to by the defendant, because the lease itself was not recorded, and because the mortgage-book containing the record was not the best evidence.

The evidence was admitted and a bill of exceptions sealed.

The plaintiff then gave evidence of the value of the goods, including certain machinery not mentioned in the indenture of mortgage, nor in the schedule thereunto annexed, but mentioned in the execution as having been added to or substituted for other machinery.

The following were points of the defendant with their answers:

" 2. The said Act of Assembly (April 27th 1855) being a particular law, and in derogation of the common law of the state, such particular law will not prevail against the common law (where the interest of third parties are affected by it), unless the provisions thereof be strictly complied with."

Answer: " I affirm this point, but instruct you that the re-

[Ladley *v.* Creighton.]

cording of the lease with the mortgage, and as a part of it, the lease being recorded in full as a schedule annexed thereto, was a compliance with the law."

"3. The said Act of Assembly requires, as one of the essential conditions of the validity of such mortgage, that the lease of the premises of which the said mortgage is predicated, shall be recorded with the mortgage; otherwise such mortgage will be void, as against execution-creditors (purchasers at a former sheriff's sale of the mortgaged chattels); and a subsequent sheriff's sale of the said chattels (under proceedings had upon such mortgage) will not affect the title of the sheriff's vendees under the first sale (or their assigns), in and to the said chattels, said assignees not being a party to said proceeding. Nor does the subsequent sheriff's sale, under the proceedings had upon such mortgage, vest any title to the same chattels in the purchaser at such sale; and the recording of a copy of the lease with the mortgage, is not a sufficient compliance with the law."

Answer: "I reply that this lease has been well recorded with the mortgage."

"4. The lease of the White Mill not having been recorded with the indenture of mortgage, under which the plaintiff claims, especially as the same was in the possession of the mortgagees, the said mortgage was invalid as against the defendant, and therefore the plaintiff cannot recover."

"6. The paper pretended to have been recorded with the mortgage, under which the plaintiff claims, not having been the lease of the White Mill, made by Sarah Hirst, nor even the copy pretended (by the plaintiff) to have been acknowledged before Alderman McCahen, but a copy of a transcript of the said paper, pretended to have been acknowledged as aforesaid, made from the books of the recorder of deeds, is not the recording of the lease of the White Mill, required by the aforesaid Act of Assembly; and therefore in law the plaintiff cannot recover."

The court refused the 4th and 6th points.

"7. The lien of a chattel mortgage binds only the chattels therein mentioned, or the chattels mentioned in the schedule thereunto annexed, and does not bind any other chattels that may be afterwards brought upon the property; and in no case could the plaintiff recover other or more property than the property actually mortgaged; nor does the judgment bind property not described in the mortgage."

Answer: "I refuse so to charge the jury, but I reserve the point, whether the plaintiff acquired, by his purchase at the sheriff's sale under the mortgage, a good title to the articles brought into the mill after the execution of the mortgage, and sold under the levari facias."

The jury returned the following verdict:—"We find for the

[Ladley *v.* Creighton.]

plaintiff, for the sum of $8711.22, subject to the opinion on the point reserved—That if the plaintiff acquired no title by his purchase at the sheriff's sale, to the articles brought into the mill after the execution and delivery of the mortgage, then we find for the plaintiff for the sum of $5807.48 only."

The court afterwards entered judgment for the plaintiff on the reserved point for $8711.22.

The defendant took a writ of error, and assigned for error :—

The admission of the record of the scire facias on Creighton and Peirce's mortgage; the admission of the record in the mortgage-book of the mortgage, lease, &c.; the answers to the defendant's points, and entering judgment for the plaintiff on the reserved point.

*T. J. Clayton* and *J. Blackburn*, for plaintiff in error.

*P. McCall* and *W. E. Whitman*, for defendant in error.

The opinion of the court was delivered, May 13th 1872, by

AGNEW, J.—The principal question in this case is upon the validity of the mortgage given by William Tomlinson to Hugh Creighton and Joshua Peirce, upon the lease and fixtures of a property known as the White Mills. The objection is, that the lease from Sarah Hirst to William Tomlinson was not recorded with the mortgage. A copy of the lease was appended to the mortgage as a schedule and recorded with it. It is contended that this was not a compliance with the first proviso to the Act of April 27th 1855, § 8, Pamph. L. 368, Purd. 330, pl. 128, requiring the mortgage to be acknowledged and placed on record in the proper county, *together with the lease*. In Sturtevant's Appeal, 10 Casey 149, it was held that this provision is mandatory, and the mortgage is void as against execution-creditors, unless the lease be so recorded. But the true question here is, whether there has been a substantial compliance with the law. The purpose of the law is to give authentic information of the nature and extent of the mortgagor's title under the lease. It cannot be doubted when the lease is once actually recorded along with a mortgage, that a copy annexed to a subsequent mortgage, with a reference therein to the former record of it, in the manner usual to identify the time and place of its record, would be fairly within the meaning of the act. It is the fact of the record of the lease, and the connection of that fact with the mortgage, to enable the public to ascertain the nature and extent of the mortgagor's title, which was contemplated. Now this is done as well by the first record as by any subsequent entry of the lease, provided the mortgage makes such specific reference to it as will place the record before the view of any one searching the record

[Ladley *v.* Creighton.]

of the mortgage. Any other interpretation of law would seriously impair its purpose. In the case of a lease lost or destroyed by accident after its first record, or a delivery of it to a former mortgagee who refuses to part with its possession, the lessee would be prevented from making any further mortgage of his title. In the case before us, the lease was executed on the 25th of January 1858, and acknowledged on the 14th of October 1859. On the 18th of March 1862, Mrs. Hirst, the lessor, and Tomlinson, the lessee, in whom the whole interest was then vested, took a copy of the entire paper, and went before another alderman and acknowledged it to be their act and deed, and desired it to be recorded as such. This paper was duly recorded with a former mortgage on, the 19th of March 1862. A copy of this entire document, including the last acknowledgment and the certificate of recording it, was attached to the mortgage before us; and the whole instrument was then duly recorded. Certainly this was a substantial compliance with the act. The document reacknowledged by the proper parties to the lease in 1862, and recorded as an original, is not a mere copy. It is rather in the nature of a duplicate original. It was adopted by the parties, and being duly acknowledged by Mrs. Hirst and William Tomlinson as their act and deed, it stands upon higher grounds than a mere unauthorized transcript. After such an act, Mrs. Hirst would clearly be estopped as against the mortgage-creditors from denying the force of the paper as evidence of the nature and extent of the lease; and this is all that is necessary to make the mortgage effective. We think the learned judge committed no error in his instruction that the lease was sufficiently recorded with the mortgage to make it valid.

The next material question is as to the machinery alleged to be brought into the mill after the execution and recording of the mortgage. That this was new machinery may be safely inferred, but that it was independent and falling outside of the description in the mortgage is not clearly shown in the evidence. All we find in the bill of exceptions is that the plaintiff then gave evidence of the value of the goods, including certain machinery not mentioned in the indenture of mortgage, nor in the schedule thereunto annexed, but mentioned in the executions as having been added to or substituted for other machinery. The question as to the independent character of this new machinery is not clearly presented, and we cannot therefore affirm that the court erred in holding that the new machinery fell within the grasp of the mortgage. It certainly is not excluded, because it is not specifically enumerated or mentioned in the mortgage, or in the annexed schedule. The mortgage is general and comprehensive in its terms, while it does not appear that the schedule was intended to exclude everything that was not enumerated in it. The purpose of this schedule was

[Ladley *v.* Creighton.]

evidently to secure the mortgagee in the title to all the machinery enumerated in it, that in the great variety and number of parcels, the mortgagor continuing in possession, should not be able to dispose of them to the prejudice of the mortgagee. The language of the mortgage is sufficiently comprehensive to include new machinery, for after conveying the lease and the machinery described in schedule A, it proceeds further to say: "And all and singular the building, fixtures and machinery therein to said Tomlinson belonging, and thereunto appertaining." It would be a narrow and illiberal interpretation of the Act of 27th April 1855, to say that it means to confine the lien of the mortgage to the precise machinery in a building at the time of its execution. Very few manufactories of any kind can run a year or even months, without the substitution of new parts for those worn out, broken or otherwise rendered useless. A woollen-mill, cotton-mill, rolling-mill or other factory must be looked upon as a whole, and all its parts as contributing to the success of its business. It must therefore be constantly kept in operating condition by the renewal of those parts which become worn out or useless, extending frequently to entirely new machines. Now to say that the mortgage bears upon the old parts only, and not the renewed, would deprive it of much of its value. There would be both the want of value in the remaining parts, and the uncertainty of the purchaser as to what he would get, to deter bidders at the judicial sale. Now all that this bill of exceptions informs us is, that the executions mentioned this machinery as having been added to *or substituted.* We find nothing the court below could safely rest upon, to charge that the machinery was so entirely independent as to fall outside of the description in the mortgage. The executions referred to were those of the opposing creditors.

The record of the scire facias and judgment upon the mortgage was proper evidence. The plaintiff claimed title through this proceeding, and the defendant's case was not then before the court. It would have been error to exclude the record. After its admission the defendant claims, however, that as a purchaser of the machinery, lease, &c., under adverse executions, without notice of the scire facias and judgment on the mortgage, or being made a terre-tenant, he cannot be affected by the proceeding on the mortgage, which vested title in the plaintiff. But he had notice of the mortgage itself by the record of it, and he sets up no defence under it. He has been precluded from no defence he can make. It is not the conclusive effect of the judgment he disputes, but the validity of the mortgage itself, and failing in this he is not entitled to intervene in the proceeding under the mortgage. Whether the assignment under which he claims antedated the issuing of the sci. fa. on the mortgage is an immaterial question, for this assignment was of an adverse title, depending for its

[Ladley *v.* Creighton.]

validity on the validity of the mortgage, and not upon the proceeding under it. And if it were material, he has laid no ground in the evidence to raise the question fairly. The sci. fa. was issued on the same day the assignment bears date, but whether before or after its delivery does not appear. As between judgments entered on the same day, there is no priority, the day being without fractions; but as between a judgment and a deed, priority depends on the proof: Mechanics' Bank *v.* Gorman, 8 W. & S. 304. Without proof of the actual prior delivery of the assignment, it is impossible to say that the sci. fa. was not *lis pendens* when the defendant took the transfer. In no point of view, therefore, can we say that the sale under the mortgage failed to vest a good title to the lease and machinery in the plaintiff. It certainly was not error to admit the record itself of the mortgage in evidence. The Act of Assembly makes an exemplification from the record as good evidence as the original deed or mortgage. It would be singular, indeed, if the record from which the exemplification is taken would not be as good, if not better evidence than the exemplification, which is but a copy of a copy. It is the universal practice throughout the state to admit the books of record, whenever the exemplifications from them would be evidence. We discover no error in this record, and the

Judgment is therefore affirmed.