## DOE ex dem. SHACKELFORD vs. THE PLANTERS' AND MERCHANTS' BANK OF MOBILE.

1. A recital in a deed of trust, that some of the grantor's creditors were urging the collection of their debts at a time when there was a great pressure in the money market, and that his property, if sold at a more favorable period, would be more than enough to pay off all his debts, is but a statement of the reasons which induced him to make the deed, and does not render it fraudulent on its face.

2. A provision in a deed of trust, conferring upon the trustees "a just and reasonable discretion as to selling at private or public sale, for cash or upon time with ample security," does not make it fraudulent on its face.

3. Nor is the deed rendered fraudulent upon its face by a stipulation contained in it, that the grantor shall retain the possession of his dwelling-house and the slaves conveyed, nine in number, until the trustees, in the exercise of the discretion conferred upon them, shall think proper to sell them. (Goldthwaite, J., dissenting.)

4. When the deed conveys all the grantor's property of every description, and all debts due to him, and places all his creditors on an equality, the failure to annex a schedule of the debts due to and owing by him, or to provide any mode of giving notice to the creditors, or to make them parties to the deed, is not sufficient to render it void upon its face.

ERROR to the Circuit Court of Autauga.

Tried before the Hon. JOHN D. PHELAN.

EJECTMENT by the plaintiff in error, deriving the title to the premises through one who claimed by purchase at a sheriff's sale, made in November, 1843, under execution against Thomas W. Fleming. The defendant claimed under a deed of trust executed by said Fleming in 1838, for the benefit of his creditors, and a purchase and conveyance from the trustees in 1840.

This deed of trust recites, that the grantor owed between fifteen and twenty thousand dollars; that a larger amount was due to him than he owed, which, under the pressure of the times, he was unable to collect; that some of his creditors being disposed to coerce the payment of their claims at any sacrifice of his means, he was obliged to make an assignment of his whole estate, in order to prevent such creditors from disposing of his whole property at a time when there was but little money in circulation, thereby ruining him, and leaving more lenient creditors unpaid; that in ordinary times, if there was money in circulation, he could pay twice as much as he owed, and preserve a good estate. The deed purports to convey to the trustees all the grantor's property, debts due to him, &c., and describes particularly the real and personal property; but the debts conveyed by the assignment are not specified, except as being due by note or account, nor is there any schedule of the debts annexed to the deed. Neither is any provision made for notice to the creditors, or any mode by which they shall become parties to the assignment. The trustees, Enoch Parsons, Sampson W. Harris and Wiley W. Mason, are required to take possession of the property, notes, &c., to collect the debts, sell the property, and apply the proceeds to the payment of the grantor's debts, doing equal justice to all his creditors, and making no distinction between them. The deed further provides, "that the trustees shall have a just and reasonable discretion as to selling at private or public sale, for cash or on time, with ample security;" and contains a stipulation that the grantor shall remain in possession of his dwelling-house and the slaves conveyed, nine in number, until the trustees should think proper to sell them.

The plaintiff requested the court to instruct the jury, that

this deed was fraudulent on its face and void as to creditors; which charge the court refused to give, and the plaintiff excepted.

The refusal to give this charge is assigned for error.

ELMORE & YANCEY, for plaintiff in error:

A deed of assignment made by one in failing circumstances, purporting to be an absolute conveyance of all the estate of the debtor to pay his creditors, to be valid, must fairly and *bona fide* devote the whole property to payment of creditors, without stipulating for any benefit to the debtor. Gazzam v. Poyntz, 4 Ala. 374.

In such a deed, there must be no condition, direct or indirect, controlling the application of the property. All over and above what is necessary for a devotion of the property to payment of the debts is fraudulent. Hafner v. Irwin, 1 Iredell 498.

Where the property is protected against the creditor, and for benefit of the grantor, it is a hindrance and delay to the creditors, and against the statute of frauds. Ib.

The whole purpose of the grantor must be to devote the property to satisfaction of his debts. If, therefore, it appears that any part of the purpose is, that the deed is to be used or to avail for the ease or favor of the debtor, it is fraud, and against the statute. Hafner v. Irwin, 1 Iredell 497–8; Smith v. Leavitts, 10 Ala. 105.

By these principles, the deed in question is fraudulent on its face, and void. It is filled with complaints against his creditors, because they were disposed to sell his property when there was no money in circulation; it recited, that the grantor had more than enough to pay all, if sold at a more favorable time; it recites, that if sold in such more favorable time, a fine estate would be left to him, after payment of his debts; it gives to his trustees unlimited discretion as to time when they should sell his property; it gives them discretion as to selling for cash or on time, and on what time; it expressly stipulates, that he shall keep possession and use, without charge, of his dwelling and nine slaves, until the trustees see fit to sell.

The effect of these stipulations is, to keep the creditors out

of the use and benefit of the dwelling and slaves, so long as the trustees see fit to indulge the grantor. Another effect is, to subject the creditors to such delay as the trustees choose to give time on the sales they make; and thus put it in the power of the grantor, through the trustees, to compel a needy creditor to take less than the face of his demand in cash. Another effect is, that the discretion, as to when they would sell, given to the trustees, could operate to delay the sale until the arrival of that time contemplated by the grantor, when money would be plenty; and after the sale, there would be a fine estate left for him.

This case is quite variant, in facts, from those of Planters' and Merchants' Bank of Mobile v. Clark, 7 Ala. 765, and Abercrombie v. Bradford, 16 Ala. 560. In the first, all the rents, profits and issues were granted to the trustees, and they were not bound by the deed to allow the grantor to remain on the place. In the last, the time in which grantor could keep possession was limited to six months, and he could have been put out before.

This deed contains no schedule of property, no list of creditors, nor amount due; and no provision that notice should be given to creditors, or that they should become parties to the deed; and is void, *prima facie*, on authority of Cummings v. McCullough, 5 Ala. 324.

Possession of personalty named in the deed being unchanged, and remaining by stipulation in the grantor, is conclusive evidence of fraud in an absolute sale, as against creditors.

This deed is nothing more than an absolute sale for the benefit of creditors, and such possession is fraudulent.

When it appears on the face of the deed of trust that the object is to prevent a sacrifice of the debtor's property, that shows an intention to obstruct creditors in subjecting the property to their debts, and the deed is *ipso facto* void. Vernon v. Morton et al., 8 Dana 263; Ward v. Trotter et al., 3 Monroe 1; Bucklin v. Thompson, 1 J. J. Mar. 223.

The deed shows on its face, that Fleming was obliged to part with his property under the coercion of some of his creditors to pay their debts, or to dispose of it in some other way to prevent a sacrifice of it, and also secure to himself a

benefit which he could not otherwise obtain. It also shows an apparently peculiar anxiety that these unfeeling creditors should share in the property assigned; it also shows an undoubted ability to pay all his debts, if he could prevent the sacrifice of his property which was impending from the acts of these creditors; and it also shows that he ascribed to these creditors and their refusal to indulge him, or, in his own language, their attempt to coerce their debts, that crisis in his affairs which eventuated in his making this deed. Enders v. Swayne, (3d point decided, 104,) 8 Dana 103.

BELSER & RICE, *contra:*

Fleming's deed of trust is not fraudulent on its face. Abercrombie v. Bradford, 16 Ala. 560; Baxter v. Wheeler, 9 Pick. 21; Cannon v. Peebles, 2 Iredell, 204; Marriott v. Givens, 8 Ala. 694; Ravisies v. Alston, 5 ib. 297; 2 Stew. 86; 11 Wend. 240.

The intention of the assignor, as manifested in the recitals of the deed, was, to appropriate his entire property to the payment of all his debts. It was made when the property conveyed was unencumbered, and when no suits were pending against the assignor. It makes no difference between "feeling and unfeeling creditors." The plain intention was, to make the property pay all the creditors, to make such a disposition of it as the law would presume was beneficial to them.

The rule of equity is the rule of equality, which is the rule of our common and statute law. If, therefore, a debtor appropriate his property by deed in a manner most consistent with the common law, the statute law and the principles of equity, the validity of the transaction should not be impaired, although his intention was fraudulent. The act is right, though the motive may be wrong. Bancroft et al. v. Blizzard, 13 Ohio R. 30.

Where the intent or purpose of the transaction is to pay just and *bona fide* debts, and all the grantor's creditors are placed upon a perfect equality, the law will not pronounce it void, merely because the debtor had apprrehensions that a portion of his creditors designed to sacrifice his property, and thereby disable him from paying all his creditors, and execu-

ted the deed to prevent such sacrifice. The right to prefer one creditor to all others, necessarily implies the right to prevent that portion of the creditors who are not preferred from sacrificing the debtor's property. There is no fraud in the deed. Gassett & Co. v. Wilson & Brown, 3 Florida R. 235.

GOLDTHWAITE, J.—The only question made in the case is, as to the validity of the assignment executed by Fleming.

The parts of the deed relied on by the plaintiff in error, in support of the position that it is fraudulent upon its face, are :

1. The statement or recitals which it contains, in relation to a portion of the creditors being disposed to sell the property of the assignor, at a time when there was but little money in circulation, and that his property was more than sufficient to pay his debts, if sold at a more favorable period, and if thus sold, a considerable surplus would be left.

2. That the assignment conferred unlimited discretion upon the trustees as to the time at which, and the terms on which, they should sell the property conveyed.

3. The stipulation allowing the assignor to retain possession of the dwelling-house and slaves, until they should think proper to sell the property.

4. That the assignment contains no schedule of property, no list of creditors, or amounts due either to them or the assignor, and no provision for notice to creditors, or for their becoming parties to the deed.

As to the statements in the assignment, in relation to the disposition of creditors to sell the property of the assignor, at a time when it would not bring its full value, and that a considerable surplus would be left, after the payment of all his debts, if sold at a more favorable period : we regard them as amounting to no more than a statement of the reasons which operated upon the assignor, in making such a disposition of his property as would, in his opinion, do equal justice to all of his creditors; and if the disposition made by him was sanctioned by law—if it was a devotion of all his effects to the payment of his debts, without any reservation of interest beneficial to himself, or prejudicial to his creditors,

it would not, under the decisions of this court, be considered as fraudulent upon its face.

The authority giving to the trustees a just and reasonable discretion as to selling at private or public sale, or for cash or upon time, was expressly decided by this court, in the case of Abercrombie v. Bradford, 16 Ala. 560, to be equivalent in its legal effect, to a provision authorizing the trustee to sell for such prices, and on such terms, as he might deem expedient; which reservation, as it invested the trustee with a discretion which, properly exercised, might be beneficial to the creditors, was for that reason sustained. See also, 9 Porter 566.

In relation to the clause which reserves to the assignor the right to retain possession of the dwelling-house and slaves, until the trustees should think proper to sell this property, my own opinion is, that as, by the terms of the assignment, the trustees were bound to exercise a sound discretion as to the time at which the property conveyed should be sold, it was equally their duty in the meantime, to manage such property for the interest of those for whose benefit the assignment was intended; and that a stipulation reserving to the debtor the right, during this period, to the use of valuable and productive property, was not only a reservation for his own benefit, but in direct opposition to the proposed objects of the conveyance, as it enabled him to exercise a control over the property which was inconsistent with the rights of creditors, by taking from them their right to the rents and profits during the time the trustees might think it advisable to hold it up from sale. The tendency of courts of late years has not been in favor of conveyances of this character; and the ease with which frauds are perpetrated under cover of deeds of this description, renders it necessary that they should be subjected to a close and severe scrutiny. I am unable to perceive any valid reason why the assignor might not stipulate for the possession of fifty, as well as nine slaves, and other property, as well as a dwelling-house. The fact that the duration of the possession was uncertain, does not deprive the stipulation of its beneficial character; nor is it any answer to the argument, to say that the law would permit the trustees to allow the retention of this property by the debtor.

The law, as I conceive, would not allow this disposition to be made, unless required by, or at least not prejudicial to the interest of the creditors; and would hold the trustees responsible for the rents and profits of the property, from the conveyance to the sale. A debtor may make an assignment for the benefit of his creditors, but the law in such case requires the faithful and honest devotion of his whole estate to the payment of his debts; and in this court a provision the exercise of which may enure to his benefit, or result to the prejudice of the creditor, by authorizing the trustee to compound debts, is held sufficient to render the assignment void upon its face; not, as we apprehend, for the reason that this power will necessarily be employed to the benefit of the one or the prejudice of the other, but because it confers upon the assignee a power so inconsistent with the professed objects of the deed, as to afford conclusive evidence that the intention of the assignor was fraudulent. So here, when the debtor having the full title, conveys his property to trustees, that it may be sold for the payment of his debts, reserving to himself as a right, a possession which the trustees would not be permitted to allow, except in the exercise of a sound discretion, and to promote the objects of the trust, I can regard it in no other light than a conveyance, to that extent, in trust for himself; and the conclusion which the law invariably draws in such cases is, that the grantor, by the insertion of a clause of this character, intended the reservation to operate for his own benefit, without regard to the rights of creditors; and this intention it denounces as fraudulent, without regard to the amount of beneficial interest reserved. I am aware, that these views are in conflict with the decision in the case of Abercrombie v. Bradford, 16 Ala. 560, holding that a provision in a deed of assignment, authorizing the assignor to remain in the possession of the property conveyed until a favorable opportunity offered for the sale, did not render the instrument void upon its face; but the reasoning on which the decision rests is, to my mind, in opposition to well established legal principles; and believing that its tendencies will be to the encouragement of fraud, and to invasions of the just rights of the creditor, I do not think this decision should be adhered to. The other members of the court, however,

regard the case referred to as a correct exposition of the law, and taken as such, it is decisive upon the point under consideration.

The failure to annex a schedule of the debts due to, and owing by the assignor, or to provide any mode for giving notice to the creditors, or to make them parties to the deed, is not sufficient to render the deed void upon its face. Cummings & Cowper v. McCullough. The failure to annex the schedules may be a suspicious circumstance; but the weight of it in that respect was properly referable to the jury, and as by the terms of the deed no preferences were given, but the simple duty of the trustees was, to sell the property, collect the debts, and appropriate the same to the payment of the debts of the assignor, without distinction or preference, we do not see that it was necessary they should be made parties to the deed, or that any notice was required to be given them.

It results from these views, that there was no error in the proceedings of the court below, and the judgment is affirmed.

CHILTON, C. J.—The argument contained in the opinion delivered by my brother Goldthwaite, in opposition to the conclusion arrived at by a majority of the court, is certainly very plausible; and if the premise upon which it is predicated be correct, it is clearly unanswerable. It is too clear to admit of any controversy, that an insolvent debtor, in the general assignment which he makes for the payment of his debts, must fairly and honestly devote the property to the purpose contemplated, and that he cannot place his effects beyond the reach of his creditors, in trust for his own benefit, by any stipulation in the deed. If a reservation be made in the deed, the necessary effect of which is to benefit himself, to the delay, postponement or prejudice of his creditors, such provision would render the assignment fraudulent and void. We do not differ upon the general doctrine as to what will render a deed void on its face, but in the application of the doctrine. The argument in the opinion assumes, that the stipulation in the deed allowing Fleming to retain possession of the dwelling-house and slaves until the trustees should, in

their discretion, take possession for the purpose of disposing of them, either at private or public sale, was a stipulation prejudicial to the creditors. If, as I have said, the fact be as assumed, then the conclusion would follow. But can any court pronounce, as a matter of law, that the provision allowing the grantor to retain the possession as provided for in this deed was prejudicial to the creditors, or beneficial to the assignor? The property must be kept by some one until a sale could be effected; and as it was not known but that it might be required the next day after the deed was executed, there would seem to be no valid ground to infer that the provision was prejudicial to the creditors. It may have been, and most probably was, beneficial to them. It may have been the very worst economy, for the trustees to have placed the family residence and servants in the possession of such tenant as would likely have rented the property, upon condition of surrendering it up at any time when a profitable sale could have been effected. Again, the property may have been in such condition as to require the attention of its former owner, who was as much interested as the creditors in preventing a deterioration in its value. The most, however, that can be predicated of the reservation, if such it may be called, which allowed the grantor to retain possession of the property until the trustees should take it for purposes of a sale, is, that it might or might not be prejudicial to the creditors, as the circumstances attending the property might show that it was proper or impolitic to rent it, or to retain Fleming, the grantor, as its custodian. This being the case, and the provision being beneficial or prejudicial according as the facts and circumstances exist outside of the deed, it is not for the court, in its desire to suppress or discourage such assignments, to place the most unfavorable construction upon it, and to determine the fact that it does operate to the prejudice of creditors, and upon this determination of the question of fact, to predicate the conclusion of fraud in law.

When an instrument admits of two constructions, the one rendering it fraudulent and void, the other honest and valid, the latter should always be indulged, *ut res magis valeat quam pereat;* and also, upon the recognized doctrine, as frequently asserted by this court, that we should never indulge a pre-

sumption of fraud, when the facts may consist with purity of intention. That there are many cases in which the court may pronounce the deed fraudulent and void on its face from the nature of the reservation, all will readily admit; but these are cases where the rights of creditors are invaded, and something valuable reserved to the insolvent and withdrawn from the creditors; cases in which the intent is apparent from the face of the instrument itself, to benefit the assignor, at the expense or to the prejudice of the rights of his creditors, or to delay, hinder or defraud them by some other onerous provision. When, however, the presumption of fraud, as arising upon the face of the deed, cannot be conclusively drawn from the dubious nature of the provision on which it is attempted to predicate it, it becomes a disputable presumption, one capable of being explained and repelled by proof. In such case, the deed should not be declared void upon its face, and excluded from the jury; but it may be read to them, and it is for them, under the direction of the court, to determine, upon the effect of the whole proof, whether a fraudulent intent did in fact exist. Such was, in effect, the decision of a majority of this court in the case of Abercrombie v. Bradford, 16 Ala. Rep. 560; and although the reasoning employed by the Chief Justice, in delivering the opinion in that case, may be a little faulty, a majority of the court, as at present organized, deem the conclusion arrived at as altogether correct.

The consequences which my brother Goldthwaite thinks may follow from this decision, can never result, so long as we may repose confidence in the correctness of the finding of juries.

In these views a majority of the court concur.