# WALTHALL'S EX'RS *vs.* RIVES, BATTLE & CO.

[CREDITOR'S BILL TO HAVE MORTGAGE DECLARED VOID OR FORECLOSED.]

1. *Allegations of creditor's bill, and how to take advantage of defect.*—It is a necessary allegation of a creditor's bill that the complainant is a creditor of the defendant; and the want of such an allegation is a defect which is available on the hearing.

2. *What relief may be had under creditor's bill.*—A creditor may file his bill with a double aspect; asking to have a mortgage, executed by his debtor, declared fraudulent and void, or, if not fraudulent, foreclosed for his benefit; but he cannot have a foreclosure, when his bill alleges that the mortgage has been satisfied and discharged.

3. *Validity of mortgage.*—A mortgage, given for the indemnity of a surety, is not rendered fraudulent and void on its face as to creditors, by the insertion of a clause conferring on the mortgagee a discretionary power of sale for his own protection; nor by a recital that sundry judgments have

already acquired a lien on the property, which the mortgagor has no desire to avoid ; nor by a reservation to the mortgagor of the property exempt from levy and sale under execution at law.

4. *Responsiveness of answer, and effect as evidence.*—An answer responsive to an interrogatory, as to any matter relevant to the allegations or charges of the bill, is evidence against the complainant, and throws on him the burden of disproving it.

5. *Estoppel against mortgagee from buying property under older lien.*—The acceptance of a mortgage does not estop the mortgagee from purchasing the mortgaged property under judgments having a lien paramount to that of the mortgage.

6. *Remandment of cause, on reversal, for amendment of bill.*—When an objection to the equity of a bill, founded on the want of a necessary allegation, is overruled by the chancellor, and his decision on that point is reversed on error, the appellate court will remand the cause, in order that the complainant may apply for leave to amend his bill.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Rives, Battle & Co., commission-merchants in Mobile, against Richard B. Walthall and Thomas H. Hill; and sought to have a mortgage, executed by said Hill to his co-defendant, declared fraudulent and void as to complainants, or foreclosed for their benefit. The complainants obtained two judgments against said Hill, one on the 2d, and the other on the 24th February, 1846, on which executions were issued and returned "no property found;" but, in describing these judgments, the bill nowhere averred that said Hill was the defendant therein. Hill's mortgage to Walthall, which was made an exhibit to the bill, was executed on 22d February, 1846; purported to be given for the purpose of indemnifying Walthall against liability as surety and accommodation endorser for Hill on debts amounting to over $13,000, most of which were then past due; recited that there were executions against Hill then in the sheriff's hands, amounting to about $10,000, "which executions have already acquired a lien on his property, and the payment of which he has no disposition or desire to avoid;" and conveyed to the said Walthall a tract of land containing four hundred and ninety acres, together with about sixty negroes, a lot of horses, mules

and cattle, farming utensils, household and kitchen furniture, corn and fodder, &c., upon the following trusts:

"To have and to hold the said lands, and the said slaves, with the increase of the females, and the said personal property, (saving and excepting such as is exempt from levy and sale under execution by the laws of this State,) to the said Richard B. Walthall, his heirs, executors, administrators and assigns; *in trust*, nevertheless, for the following uses and purposes—that is to say: That the said Walthall is hereby authorized and empowered, to proceed in the manner, and as soon as he, in his discretion, shall deem best for his security in the premises, to sell and dispose of all the said property, real and personal, (which may remain unsold under the execution hereinafter mentioned,) at public outcry, for cash, at the residence of said Hill, (having first given at least thirty days notice of the time and place of such sale, by advertisement posted at the court-house door of the county first aforesaid, and at Greensboro' and Newbern in the county of Greene,) and upon such sale to execute and deliver good and sufficient deeds and bills of sale of said property, and all the instruments of conveyance proper to effect the sale and transfer of all and every portion of said property; and with the proceeds of such sale the said Walthall shall pay all the just and reasonable expenses and charges of making and carrying into effect this assignment and the objects thereof, and the residue of the proceeds of said sales shall be considered as the net avail and proceeds of the property and effects herein and hereby assigned; and out of the said net avail and proceeds of such sales the said Walthall shall pay off and discharge in full the whole amount of the said bills of exchange hereinbefore described, which were by the said Walthall accepted or endorsed for the accommodation of said Thomas H. Hill, together with all of such costs and damages as have or may accrue thereon by reason of the non-payment thereof at maturity. The said Walthall shall also pay out of such net proceeds one-half of the said bills of exchange and judgments hereinbefore mentioned, on which the said Walthall is jointly liable as surety and endorser with

said Hill, together with one-half of the costs and damages which may have accrued thereon by reason of the non-payment of said claims; and if there should be a surplus remaining after the full payment and satisfaction of the expenses and charges aforesaid, and of the aforesaid bills of exchange and judgments, then the said Walthall shall pay the same to the said Hill, his heirs, executors, administrators and assigns. And the said Richard B. Walthall, the assignee herein named, in consideration of the covenants and assignments herein contained, doth hereby accept the said assignment, and doth covenant with the said Thomas H. Hill, by these presents, that he will, with diligence and fidelity, execute, perform and fulfill all and singular the trusts reposed in him, according to the terms of this indenture. In testimony whereof," &c.                   (Signed by both parties.)

Walthall answered the bill, and incorporated in his answer a demurrer for want of equity. On his death pending the suit, his executors were brought in by bill of revivor and supplement. The chancellor overruled the demurrer, and, on final hearing on the merits, rendered a decree for the complainants; setting aside the mortgage to Hill, ordering an account, &c. The overruling of the demurrer, the final decree on the merits, and other matters which require no particular notice, are now assigned as error.

I. W. GARROTT, and WM. M. BROOKS, for appellant.

J. R. JOHN, and P. LOCKETT, contra.

A. J. WALKER, C. J.—The complainants' bill contained no equity, unless they were creditors of the defendant, Thomas H. Hill. In the absence of that fact, they have no ground whatever upon which to come into court. The bill does not aver that fact, and is, therefore, wanting in equity. This defect was available on the hearing, as are all defects which affect the equity of the bill. Because the bill was thus wanting in equity, the decree of the chancellor in favor of the complainants was erroneous, and must be reversed.

Anxious to abridge, as far as we can, the litigation in this case, we proceed to consider the questions, which are likely to arise in the court below, after the defect above noticed is remedied by amendment, so far as we can anticipate their form and shape.

[2.] There are two distinct alternative claims to relief, which the complainants set up. The first is, that the mortgages described in the bill are void, and should be declared void. The second is, that the mortgages, if not fraudulent, should be foreclosed, and the surplus, after the satisfaction of the secured debts, should be appropriated to the discharge of the complainants' judgment. The granting of those two kinds of relief certainly pertains to the jurisdiction of the chancery court.—Dargan v. Waring, 11 Ala. 988; 1 Hilliard on Mort. 365, § 14, note c; 2 ib. 117, note d; Chambers v. Mauldin, 4 Ala. 477; Cullum v. Erwin, ib. 452; 1 Powell on Mort. 256, n.

The bill could not authorize the grant of the latter relief to the complainants, because it avers, in the 22d paragraph, that the mortgage debts are discharged, either by the receipts of Walthall, or of Hill as his agent, and for his benefit, out of the profits from the mortgaged property. Before the complainants can be let in to redeem, and be substituted to the right of the mortgagee in a foreclosure, it must appear that the mortgages were valid and outstanding. The complainants cannot, in opposition to the case made by the bill, have a foreclosure for their benefit of the mortgages.—Wiley, Banks & Co. v. Knight, 27 Ala. 336.

[3.] The mortgage of 22d February, 1845, contains a clause, authorizing and empowering the mortgagee to proceed in the manner, and as soon as he in his discretion shall deem best for his security in the premises, to sell and dispose of all the property conveyed. The instrument is a mortgage to Walthall, designed to save him harmless and free from all loss or damage by reason of his liability as surety of the mortgagor, and his liability as co-surety of the mortgagor for the mortgagor's share of common debts. The mortgage contains a power of sale, and authorizes the mortgagee to sell and pay off the debts

without any prior subjection to their payment. A provision in such a mortgage, that, as soon as the mortgagee in his discretion should deem it best for his security, he might sell and appropriate the proceeds to the payment of the specified liabilities, was by no means a reservation for the benefit of the grantor. It was rather a stipulation, which excluded the mortgagee from a consideration of the mortgagor's interest in fixing the time of sale, and directed him to look to his own protection in the exercise of his discretion. The investing of the mortgagee with such a discretionary power as to the time of the sale, does not, *per se*, vitiate the mortgage.—Shakelford v. P. & M. B'k of Mobile, 22 Ala. 238 ; Evans v. Lamar, 21 Ala. 333; Abercrombie v. Bradford, 16 Ala. 560 ; Ashurst v. Martin, 9 P. 566. Such a provision does not place the other creditors of the mortgagor at the mercy, or under the control of the mortgagee. For, if he should fail to act *bona fide*, and exercise his discretionary power within a reasonable time, chancery would afford an adequate remedy.

Neither the recital that there are sundry judgments which have acquired a lien upon the property, and which the grantor has no desire to avoid, nor the exception from the mortgage of the property exempt from execution, is sufficient to sustain the imputation of fraud. It might be altogether proper to disclose in the mortgage the existence of any paramount liens; and certainly outside creditors cannot be prejudiced by the exclusion of property which the law places beyond their reach.

[4.] The answer of a defendant to an interrogatory, as to any matter relevant to the allegations or charges of the bill, is certainly evidence against the complainant.—Fenno v. Sayre & Converse, 3 Ala. 458–479; Br. Bank v. Marshall, 4 Ala. 60–64; Hogan v. Smith, 16 Ala. 600–602; Powell v. Powell, 7 Ala. 582; 3 Green. on Ev. §§ 284–285. Tested by this principle, the answer of Hill, as to the consideration of the debts named in the mortgage, was evidence against complainants, and threw upon them the *onus* of proof.

[5.] Upon the principle settled in Randolph v. Carlton,

8 Ala. 606, the mortgagee, Walthall, was not estopped by his acceptance of the mortgage from purchasing the property conveyed by the mortgage, under judgments having a paramount lien to the mortgage. And if it should appear, in the further progress of this case, that he made such purchase, he would establish a title beyond the reach of the complainants.

The taking of other proof, and the making of amendments to the pleadings, may so far alter the other questions involved in this case, that it would be improper for us to attempt to decide them. Indeed, our anxiety to lessen the area of strife in the court below may already have induced us to venture too far, in anticipating the questions which will arise in the court below.

[6.] The want of an averment that the complainants were creditors of Hill, was made the point of an objection to the bill in the court below, and was overruled by the chancellor. If the objection had been sustained, the complainants could have made an application for leave to amend, and the chancellor would probably have allowed it. In such a case, we think it a proper practice to remand, in order that the complainant may have an opportunity to make the application for an amendment which was rendered apparently unnecessary by the ruling in his favor.

The decree of the chancellor is reversed, and the cause remanded.