# STETSON & CO. vs. MILLER.

[CREDITORS' BILL TO SET ASIDE DEED OF TRUST AS FRAUDULENT.]

1. *Validity of deed of trust for benefit of preferred creditors.*—A deed of trust, made by a debtor in failing circumstances, while actions at law were pending against him, and only a few days before the rendition of judgments; conveying his stock of merchandise, storehouse and residence, which constituted the bulk of his visible property, to a trustee for the benefit of certain *bona-fide* creditors; authorizing the trustee to sell the goods "at either public auction or private sale, as in his judgment may be best calculated to bring

the largest sum of money;" and providing that the proceeds of the sale of the property, after payment.in full of the secured debts, together with the costs and charges attending the execution of the trust, should be paid over to the grantor or his order, (which deed was declared by this court, on a former appeal, not to be fraudulent and void on its face,)—held not fraudulent in fact, on proof that the trustee sold the goods at retail, and mostly on credit till the end of the current year; that the grantor afterwards paid some of the secured debts with funds not conveyed by the deed; and that he declared a few days after the execution of the deed, but not in the presence of the beneficiaries, that his object in executing it was " to keep the executions out of his house."

2. *Difference between deed of trust and general assignment.*—A deed of trust, executed by a debtor in failing circumstances, and conveying the bulk of his visible property to a trustee for the benefit of certain preferred creditors, cannot be held. a general assignment, (Code, §1556,) when it appears that the grantor.had also notes and accounts due him, of considerable value, not conveyed by the deed.

APPEAL from the Chancery Court at Tuskaloosa.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by the appellants, as judgment creditors of Thomas Miller, against said Thomas Miller and one James H. Dearing; and sought relief against a deed of trust, executed by said Miller on the 21st September, 1854, by which he conveyed his entire stock of merchandise, his store-house, and residence in the city of Tuskaloosa, to said Dearing as trustee, for the benefit of certain specified creditors, whose debts amounted in the aggregate to nearly $8,000, and were either past due or fell due within six months after the execution of the deed. The bill, as copied into the transcript in the present case, alleged that said deed " was made with intent to hinder, delay and defraud said complainants, with other creditors of said Miller not therein named, of their lawful debts, and is therefore void ; or that said deed is a general assignment, by which a preference of payment is given to the creditors therein named, over the other and remaining creditors of said Thomas Miller." The prayer of the bill was, " for such relief as complainants may be entitled to on the case made by their·bill of complaint,

and as may be consistent with the justice and equity of their case." The chancellor held the deed void on its face, as to the complainants; but his decree was reversed by this court, and the cause remanded, at the January term, 1858.—See the case reported in 32 Ala. 161, where the provisions of the deed are set out *in extenso.* (The former report of the case contains a mistake of fact, in stating that, at the time of the execution of the deed, some of the complainants had obtained judgments at law against the grantor: all of the judgments were in fact rendered on the 29th September, 1854, eight days after the execution of the deed.)

The bill further alleged, that said Miller, at the time of the execution of said deed, was in failing circumstances; that the deed conveyed all his visible property that could be reached by execution at law, though he had "many thousand dollars in debts due and owing to him, none of which was conveyed by said deed," and as to which a discovery was sought from him; that said Miller continued in the possession of the stock of goods after the execution of the deed, and disposed of them at private sale, professing to act as agent of the trustee. The defendants filed separate answers. Miller denied all fraudulent intent on his part in the execution of the deed; asserted the *bona fides* of the secured debts, and his intention to provide honestly for their payment; alleged that the deed was not a general assignment—that he had outstanding judgments, notes and accounts due him, (a list of which was appended to his answer,) amounting to over $18,000, and also several small parcels of land; that he acted in the sale of the goods, after the execution of the deed, solely as the clerk and agent of the trustee; and that the goods were sold at retail, partly for cash, but mostly on credit until the 1st January, 1855. Dearing's answer was substantially the same, as to the matters within his own knowledge; and he adopted the answer of his co-defendant in other particulars.

The complainants took the depositions of J. B. Rogers, J. M. Van Hoose, and N. L. Whitfield. Rogers was the sheriff of Tuskaloosa county, who received and returned

the executions issued on the complainants' judgments; and he testified in relation to them as follows : "Shortly after I received said executions, I applied to Mr. Miller for payment. He said that he had no money, and that it was utterly impossible for him to settle the executions. I then asked him for property to levy on ; to which he replied, that he had no property subject to levy—that the stock of goods, the store-house, and the 'Van Dyke house,' were all conveyed by deed of trust to James H. Dearing, which I could see by going to the court-house. I afterwards applied to him a second time, and told him I was going to his dwelling-house to make a levy. He then said, that it was useless for me to go down there, as the house and lot, and everything there, down to the knives and forks, belonged to Dr. Tindall long ago ; but he promised to pay the costs, and afterwards did so. Said Miller was a merchant in Tuskaloosa, and had been for years before. He remained at the same business until some time in the summer of 1855, when the goods were sold at auction."

Van Hoose testified as follows : "I had a conversation with said Miller about said deed of trust, some two or three days after the same bears date, which was brought about in this way : As attorney for Bates, Taylor & Co. of New York, and W. A. Hanney, of New Orleans, I had had two claims against him for collection, and called on him to settle them ; he asked me to take drafts on Mobile, payable several months after date, and said he expected to give James H. Dearing as endorser. I then wrote to the holders of the claims, to know if they would consent to the extension asked by Mr. Miller. They did consent, and I informed Mr. Miller of the fact ; and he thereupon requested me to make a calculation of the amount due, and leave the same with him, and he would get the drafts endorsed according to agreement. I did so. In a few days afterwards, I heard that he had made an assignment, and thereupon called to see him relative to our agreement. I found that he would not then give the drafts as he had promised, and asked what I should now say to the parties ; to which he replied, 'Tell them

I will pay them—that their debts are good.' I then asked him why he had made the assignment. He replied, that Judge Peck and Judge Mudd had sued him, and judgments would soon be rendered; that he had made the assignment to keep the executions out of his house; and that if executions were levied on his goods, it would spoil everything, or words of like effect. I afterwards received another claim on Mr. Miller, and called to see him about it. He told me to write to the parties that he would pay it, and that they had known him long enough to be sure that he would keep his word; and he added, that the debts secured in the deed were ' a mere dross '—that he did not regard them, could soon pay them out, etc.; that he made the deed ' to get a breathing time,' or words to that effect, and that the executions would have been down on him, if he had not made the deed." The witness further stated, that Miller had no visible property not conveyed by the deed.

Whitfield testified as follows: " I, as attorney, obtained judgments against said Miller, one in favor of M. S. Stetson & Co., and another in favor of Oliver, Jones & Granger. The claims upon which I obtained said judgments, came to my hands, I believe, about the 1st August, 1854. I immediately presented them to Mr. Miller for payment, and told him, that I was instructed to bring suit to the first court, if they were not paid. He said he could not pay them, and urged me not to sue him; stating positively that he would pay the amount before the sitting of the September court. I left him without any definite agreement about the matter; but subsequently, on the 1st September, I think, I called on him again, and told him I must bring suit. He then urged me to let him acknowledge service of the summons, with waiver of docketing the cases before court, and that he would pay the amount the last Saturday before the sitting of the court. I accordingly took his acknowledgment; but he never called to pay the debt, and I never had any further conversation with him on the subject." The witness further testified to the pecuniary condition of Mr. Miller's debtors, whose debts were included in the exhibits attached

to the answer; stating that most of them, of whom he had any knowledge, were insolvent, or had left the State.

The defendants took the depositions of several witnesses, who testified to the *bona fides* and payment of the debts secured by the deed; some being paid by the trustee, and others by Miller with money and assets outside of the property conveyed by the deed.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, but without prejudice to the complainants' right to file another, for the purpose of subjecting the surplus which might remain in the hands of the trustee after the satisfaction of the secured debts; and his decree is now assigned as error.

E. W. Peck, for the appellants.

Ormond & Nicolson, *contra.*

STONE, J.—When this case was before in this court, (32 Ala. 161,) we said: "We have examined all the objections urged against the validity of the deed exhibited with the bill; and we are fully convinced, and therefore decide, that there is nothing *on its face* which renders it void as to the complainants, or authorizes any court to declare it void as to them."

This case, as presented on the final trial in the pleadings and proof, presents but few features worthy of remark, which were not presented on the former trial in this court.

*First:* There was some delay, and there were some postponements in making sale of the merchandise; and the sales were chiefly on credit. Looking into the facts and circumstances attending the sales, we think good and satisfactory reasons are given for most, if not for all of them. But if the record failed to respond to these inquiries, we can readily perceive that, in making sale of such commodities, so as best to promote the interest of the beneficiaries, it might, and probably would, benefit the creditors provided for, as also the general creditors of the assignor, if the assignee were, in certain states of the money-market, to postpone the sale, or sell on reasonable

terms of credit. We find nothing in this record to convince us that, in this case, the assignee was not influenced by an honest and prudent policy in making sale of the merchandise; and hence we hold, that in this objection there is not enough to justify us in pronouncing the deed fraudulent.—Dubose v. Dubose, 7 Ala. 235; Planters & Merchants' Bank v. Clarke, *ib.* 765; Tarver v. Roffe, *ib.* 873; Abercrombie v. Bradford, 16 Ala. 560; Doe, *ex dem.* v. Pl. & Mer. Bank, 22 Ala. 238.

*Second :* It is urged, that some of the debts secured by the deed were afterwards paid by the assignor, with funds not conveyed by the assignment. It seem to us that this repels, rather than strengthens the imputation of fraud. It shows both an intention in the grantor to discharge his debts, and a willingness to employ for that purpose means which still remained in his control. Moreover, as remarked by the chancellor, such payment with outside means would necessarily tend to augment any surplus that might remain in the hands of the trustee, and thus localize and consolidate a tangible fund for the payment of unpreferred debts.

*Third :* The testimony of the witnesses Whitfield and Van Hoose is ineffectual to overturn this deed, for two reasons: first, much of the conversation of Mr. Miller, shown by that evidence, tends rather to show promises made by him, and afterwards broken, than a purpose to delay, hinder or defraud his creditors; and second, the beneficiaries in the deed were *bona-fide* creditors, and there is no evidence that they participated in, or knew of those conversations. The testimony fails to convince us that Mr. Miller had any other purpose than to give a preference to some of his creditors over others. This he had a right to do.—See this case at the former term.

[2.] Both the bill and the testimony show, that Mr. Miller had much property, and of considerable value, outside of the deed. Hence, this is not shown to have been a general assignment, so as to destroy the preference.

We find no error in the record, and the decree of the chancellor is affirmed.