ENGLAND & LEE ET AL. *vs.* REYNOLDS, DEVOE & CO. ET AL.

[CREDITORS' BILL FOR SETTLEMENT OF ASSIGNMENT.]

1. *Validity of assignment for benefit of creditors; assent of beneficiaries.* An assignment by which a debtor conveys to a trustee, for the benefit of all his creditors equally, all his property, real and personal; and which authorizes the trustee "to sell and dispose of the said real and personal estate, and to collect the said choses in action, using a reasonable discretion as to the times and modes of selling and disposing of said estate, as it respects making sales for cash or on credit, at public auction or by private contract, and with the right to compound for the said choses in action, taking a part for the whole, when he shall deem it expedient so to do,"—is not vitiated by the general description of the property conveyed, nor by the failure to specify the names of the creditors, nor by the discretion given to the trustee as to the terms and mode of sale; nor is the assent of the creditors necessary to uphold the assignment against the liens of subsequent attachments.

2. *Responsiveness of answer.*—Where the bill alleges, that one of the defendants had sold a portion of the property sought to be condemned to the payment of the complainants' debts, under a pretended mortgage or lien, given by the debtor to secure a fictitious debt; and that the secured debt, if any part of it was just, was fully discharged by the proceeds of sale, leaving a balance in the defendant's hands subject to the complainants' claims,—an answer, asserting the *bona fides* of the secured debt, the validity of the mortgage, (which is made an exhibit, and which contains a power of sale,) and that the entire proceeds of the sale were not sufficient to satisfy the secured debt, is responsive.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. JAMES C. CLARK.

THE bill in this case was filed, on the 18th April, 1859, by Reynolds, Devoe & Co., and other judgment creditors of Adolph·Reis, on· behalf of themselves and such other creditors as might come in and contribute to the expenses of the suit, against said Adolph Reis, England & Lee, and certain·other creditors who had levied attachments on some of said Reis' property; and sought, principally, a settlement ·of a deed of assignment executed by said Reis, to one J. C. Perkins as trustee, for the benefit of all his creditors, and a distribution of the funds among the creditors who might be found entitled to share in it. The following is a. copy of the assignment:

"State of Alabama,  ⎫ This indenture, made and entered
　　　Perry county.   ⎬ into this 23d April, 1858, by and
between Adolph Reis, of the town of Marion, county of Perry, and State of Alabama, merchant, of the first part, and James C. Perkins, of said county and State, of the second part, *witnesseth*, that whereas the said party of the first part is indebted to divers persons, in considerable sums of money, which he is at present unable to pay in full, and is desirous to convey all his property for the benefit of all his creditors : now the party of the first part, in consideration of the premises, and of one dollar paid to him by the said party of the second part, hereby grants, bargains, sells, assigns, and conveys, unto the party of the second part, his heirs, and assigns, all his lands, tenements, hereditaments, goods, chattels, property, and choses in action, of every name, nature, and description, wheresoever the same may be; to have and to hold the said premises, unto the said party of the second part, his heirs, and assigns ; but in trust and confidence, nevertheless, to sell and dispose of the said real and personal estate, and to collect the said choses in action, using a reasonable discretion as to the times and modes of selling and disposing of said estate, as it respects making sales for cash or on credit, at public auction or by private contract ; and with the right to compound for the said choses in action, taking a part for the whole, when the said trustee shall deem it

expedient so to do; and with full power to appoint such clerks, agents, or attorneys, as may be necessary for the purpose of executing the trusts declared in these presents; but with the distinct understanding, that said party of the second part shall not be held liable for the default of such clerks, agents or attorneys as he may employ, but is only to exercise a sound discretion and judgment in the employment and superintendence of the same, and is to exercise such care and diligence as a prudent man would exercise in and about his own business, in managing and executing this trust; and in trust to dispose of the proceeds of the said property in the manner following: *first*, he shall pay the costs and charges of these presents, and the expenses of executing the trusts declared in these presents; *second*, he shall distribute and pay the remainder of the said proceeds to and among all the creditors of the party of the first part, ratably, in proportion to their respective debts; and if there should be any surplus, after paying all the parties who have debts against the said Adolph Reis, then in trust, *third*, to pay over such surplus to the party of the first part, his executors, administrators, or assigns. And the party of the first part hereby constitutes and appoints the party of the second part his attorney irrevocable, with power of substitution, authorizing him, in the name of the party of the first part, or otherwise, as the case may require, to do any and all acts, matters, and things, to carry into effect the true intent and meaning of these presents, which the party of the first part might do if personally present. And the party of the second part, hereby accepting these trusts, covenants to and with the party of the first part to execute the same faithfully; and the party of the first part hereby covenants with the said trustee, party of the second part, from time to time, and at all times when requested, to give him all the information in his power respecting the assigned property, to execute and deliver any and all such instruments of further assurance as the party of the second part shall be advised, by counsel learned in the law, to be necessary to carry into full effect

the true intent and meaning of these presents. In testimony whereof," &c. (Signed by both parties.)

The property conveyed by this assignment consisted of a store-house and lot, a stock of goods, and outstanding notes and accounts. The trustee took possession of the property under the deed, and commenced to execute the trusts; but, in a day or two afterwards, the defendants sued out their several attachments, which were levied by the sheriff on the stock of goods, and the same was afterwards sold by him under the attachments. The bill alleged, that the trustee refused to sue for the property, and declined further to execute the trust; and prayed that a trustee, or receiver, might be appointed, to take charge of the property and execute the trust. The bill alleged, also, that England & Lee, who were among the attaching creditors, "by virtue of some pretended lien, or claim of title, on or about the — day of ——, 1858, sold the said store-house and lot, for about the sum of $5,030, and claimed the proceeds of said sale under and by virtue of their said pretended lien or mortgage, and appropriated the same to their own use;" "that the indebtedness of said Reis to said England & Lee, to the amount of $2,598, on which they sued out the attachment hereinbefore described and referred to, was in fact a part, and constituted a portion, of the debt which said England & Lee pretended was secured by their said pretended mortgage, and for the satisfaction of which the said store-house and lot were sold by them, as aforesaid, under their said pretended mortgage, or lien, or claim of title; and complainants charge and insist, that, as against them, said England & Lee have no right to avail themselves of both these remedies;" also, "that the said sum of $5,030, for which said store-house and lot were sold under the pretended mortgage of said England & Lee, was more than sufficient, even if they have any just claim against said Reis, secured by any trust or mortgage, to pay off and satisfy any and all such claims; and that said England & Lee, upon a fair accounting, would be indebted to complainants for all, or a part of said sum of

money, the proceeds of the sale of said house and lot." The bill contained, also, a prayer for an account against England & Lee of the money received by them from the sale of the house and lot, and the general prayer for other and further relief.

England & Lee, with some of the other attaching creditors, demurred to the bill, and assigned the following causes of demurrer: "1st, that there is no equity in said bill; 2d, that the instrument in writing under which complainants claim is void for uncertainty on its face, not having the names of the creditors of said Reis, nor the amounts to each, any, or all of them; 3d, that said instrument is void, because it does not set forth the amount, value, or description of the property pretended to be conveyed by it; 4th, that said instrument is void on its face, because it leaves the sale, as to times and modes, to the discretion of the trustee, and allows him to sell for cash or on credit; 5th, that the creditors of said Reis are not parties to said instrument, nor does the bill aver that they, or any of them, assented thereto, or knew of the existence thereof, before the issue and levy of the attachments mentioned; 6th, that the said instrument was only a power to the said James C. Perkins, until the creditors of Reis became parties thereto, and that the issue and levy of the defendants' attachments, before said creditors assented and became parties thereto, was a revocation of said power, and the property levied on became and was subject to said attachments."

In overruling the demurrer, the chancellor delivered the following opinion:

CLARK, Ch.—"The assignment is not void for uncertainty, because it does not name the creditors or the amount due to each. This must necessarily be the form of every general assignment for the benefit of all the assignor's creditors. If it is not, the assignment, though general as to the property conveyed, would be special as to the persons named. Nor was it necessary that the assignment should set out the amount, value, and description of the

property assigned. Ever since the cause of *Robinson v. Rapelye & Smith*, (2 Stew. 86,) which has been repeatedly re-affirmed by the supreme court, the law in this State has been, that the assignment is valid without any special description; and where the assignment is general, conveying all the debtor's property for the payment of his debts, there seems to be great propriety in the description being general. Similar decisions have been made elsewhere. That the assignment is not vitiated by the discretion reposed in the trustee, as to selling publicly or privately, for cash or on credit, was expressly decided in the case of *Abercrombie v. Bradford*, (16 Ala. 560,) which was re-affirmed in *Shackelford v. P. & M. Bank*, 22 Ala. 238.

"The next ground of demurrer is, that the creditors of Reis are not parties to the assignment, nor does the bill aver that any of them assented thereto, or knew of the existence thereof, before the issue and levy of their attachments. This is evidently the important question for consideration. It is insisted that this case comes within the influence of the case of *Elmes v. Sutherland*, (7 Ala.,) and that the assignment is a mere revocable power, as it had not been assented to by any of the creditors before the levy of the attachments; and that many of them had in fact dissented from it, by suing out their attachments, and seizing the assigned effects. The case of *Elmes v. Sutherland* was a conveyance for the purpose of securing the payment of certain specified debts, some of which were past due, and others running to maturity; fixing a distant day after the maturity of the youngest debt for the execution of the trust, and providing that the debtor should continue in the meantime in the possession and use of the property. As to such cases, the court there laid down the law to be, that the deed, until it was assented to by the creditors whose debts were intended to be secured, was a mere revocable power. But that case is not like the present. Here is an absolute conveyance, of all the debtor's property, to a trustee, to pay all the debtor's creditors, without condition. It is not a deed, technically, of three parts. To be

binding on the debtor and trustee, it does not require the consent in any way of any creditor.

"In *Hodge v. Wyatt*, (10 Ala. 273,) the supreme cour said, that such a deed as that in *Elmes v. Sutherland* 'mu not be confounded with a general assignment, for the benefit of all or particular creditors; which operates, in general, without the express assent of the creditors, as assent is implied until the contrary is shown, in consequence of the benefit which must result to them from the instrument.' In *Kinnard v. Thompson*, (12 Ala. 491,) the judge who delivered the opinion of the court says, that in the class of cases like *Elmes v. Sutherland*, it is clear from the deed that the debtor intended it to operate as a conveyance only in the event that the delay stipulated for was given; and that the difference between these cases and the case then under consideration, consisted in the fact, that no delay in that case was stipulated for by the debtor, and that the property conveyed was absolutely, and under all circumstances, devoted to the payment of the specified creditors. See, also, *Maulden, Montague & Co. v. Armistead*, 14 Ala. 702; and, coming to a more recent period in our decisions, *Shackelford v. P. & M. Bank*, 22 Ala. 238. In the case last cited, the deed was, as here, a general assignment of all the debtor's property, to trustees, to pay all his debts, without any provision for their becoming parties, or having notice of its existence. It contained, however, a stipulation for the use of the property by the debtor, until the trustees should see proper to sue. There was no difference of opinion among the members of the court, except in reference to the retention of possession; and as to the question now under consideration, Judge Goldthwaite, in delivering the opinion of the court, says—'The simple duty of the trustees was to sell the property, collect the debts, and appropriate the same to the payment of the debts of the assignor, without discrimination or preference;' and he adds, 'We do not see that it was necessary they should be made parties to the deed, or that any notice was required to be given them.' Decisions have been made elsewhere,

England & Lee v. Reynolds, Devoe & Co.

that where the assignment is general, without any condition whatever being attached, the assent of the beneficiaries will be presumed.—See 11 Wheaton, 58; 7 Peters, 608–13; 16 Peters, 106–8; 4 Mason, 206; 4 Metcalf, 522; 3 B. Monroe, 218; 3 Humph. 442.

" That a general assignment, for the benefit of all the assignor's creditors, was not intended to require the assent of any of them to give it validity, necessarily follows, I think, from section 1556 of the Code, which declares, that 'every general assignment made by a debtor, by which a preference or priority of payment is given to one or more creditors, over the remaining creditors of the grantor, shall be and enure to the benefit of all the creditors of the grantor equally;' thus showing, as I think, quite satisfactorily, that no act on their part was necessary to have the benefit of the assignment. This provision of the Code ought to receive a beneficial construction, and, as we have no bankrupt system, to be treated as a substitute therefor to some extent.—See 2 Kent, 532.

" These views accord with most of the American decisions, including the more recent cases in Massachusetts, as shown by the case from 4 Metcalf above cited. But in England, where they have a bankrupt system, it seems from the authorities referred to in a note to section 1036 of Story's Equity Jurisprudence, and from the view taken by the learned commentator himself, that in all cases of general assignment, if the creditors are not parties, the assignment is deemed revocable by the debtor, except as to those creditors who have assented to the trust, and have given notice thereof to the assignee; on the ground, as stated in *Elmes v. Sutherland*, that until such assent and notice, the assignment is to be treated, as between the debtor and the assignee, as merely directing the mode in which the assignee shall and may apply the debtor's property for his benefit. This, however, has not been the American doctrine, since the case of *Brooks v. Marbury*, above referred to; and it certainly cannot be the doctrine in this State, under the decision of the supreme court and section 1556 of the

Code. The Alabama doctrine is, that where the convey-
ance is absolute to a trustee, without condition in any way,
for the benefit of all the debtor's creditors, and the deed
has been delivered, the debtor cannot revoke the trust
without the consent of all the creditors; that the convey-
ance does not create a mere power to the trustee, or pre-
sent a mere proposition to the creditors for their acceptance,
which, until accepted, the debtor may revoke or withdraw
at pleasure ; but that it is, in the absence of fraud, an ab-
solute, executed conveyance, upon valuable consideration,
for the benefit of the creditors. This being the law, it could
not be important whether any of the creditors knew of,
or assented to the conveyance, before the levy of their at-
tachments.

"The views above expressed dispose of the sixth ground
of demurrer, and leave but the single question to be decided,
whether the bill contains equity. That, I think, necessa-
rily follows from what I have said. If the assignment is
general, for the benefit of all the debtor's creditors, with-
out fraud, giving no preference to one creditor over another,
but appropriating the entire means of the debtor, *pari
passu*, to the payment of his debts, a court of chancery
will not permit a portion of the creditors to seize upon the
assigned effects, by attachment or otherwise, and appro-
priate them to the satisfaction of their demands, to the
exclusion of the other creditors. It follows, therefore,
that a bill to distribute the fund which may have been
realized by the officer of the law, on the part of the non-
seizing creditors, against the attaching creditors, will be
sustained, where the trustee has abandoned the trust.
Indeed, this seems to be the only remedy they can have to
reach the fund; and, therefore, a bill for the purpose must
have equity.—2 Paige, 568."

A decree *pro confesso* was entered against the defendant
Reis ; but answers were filed by the several attaching
creditors, asserting the invalidity of the assignment, their
own dissent from it, and the priority of lien acquired by

the levy of their attachments.    In reference to the sale of the house and lot, under their mortgage, the answer of England & Lee contained the following allegations: "Repondents admit, that on ——— day of ———, 1858, the time stated in said bill, they sold said house and lot; and they say that they sold the same under and in pursuance of the provisions of a mortgage, a copy of which is hereto attached, marked exhibit 'A', and prayed to be taken as a part of this answer; and respondents say, that on the day of the date of said mortgage, they sold and conveyed said house and lot to said Reis, who gave them the notes mentioned in said mortgage for the purchase-money, and, in order to secure the payment of said notes, and in compliance with the terms of said sale, executed the said mortgage to them.    Respondents admit, that they sold said premises under said mortgage, and appropriated the proceeds of said sale to their own use, in part satisfaction of said notes, as they insist they had a right to do; and they aver that the proceeds of said sale were not sufficient to pay said notes, and that a balance is still due to them on account of the same."

By agreement of counsel, it was admitted, on the hearing, that the several attaching creditors dissented from the assignment so soon as they were informed of its existence and terms, and immediately sued out and levied their attachments; that their debts were past due at the time, and that they afterwards recovered judgments at the times stated in their respective answers.    On final hearing, on pleadings and proof, the chancellor held, that there was nothing in the assignment which showed that it was intended by Reis to hinder or defraud his creditors; that its validity was not affected by the dissent of the attaching creditors, and that the levy of their attachments gave them no preference over the other creditors; and that England & Lee, having failed to produce any proof of their mortgage, were accountable to the other creditors for the proceeds of the house and lot.    He therefore ordered a reference to the master, to take proof of the several debts due to

the respective creditors, with an account of the assigned property, and directed the fund to be distributed *pro rata* among all the creditors whose debts were proved.

From this decree the attaching creditors appeal. The first nine assignments of error are founded on the overruling of the demurrer to the bill; and the tenth assignment is, " that the property mortgaged to England & Lee was not subject to distribution among the creditors of Reis, without regard to the paramount lien. created by their mortgage."

WM. M. BROOKS, for appellants.

J. R. JOHN, *contra.*

A. J. WALKER, C: J.—The chancellor overruled the demurrer to the complainants' bill. He considers, in an elaborate opinion, the various points arising upon the demurrer. Without committing ourselves to all the expressions contained in that opinion, we are fully satisfied with the conclusions attained, and do not think any remarks of ours necessary to vindicate their correctness. We merely cite, in support of the position that the assignment was not vitiated by the discretion given the trustee as to the terms and mode of sale, the cases of *Miller v. Stetson*, 32 Ala. 161; *S. C.*, 36 Ala. 642; and *Walthall v. Rives, Battle & Co.*, 34 Ala. 91; and refer to Burrill on Assignments, 330 to 340, for an able review of the authorities upon the question, whether the assent of the creditors was necessary to the maintenance of the assignment.

[2.] An approval of the chancellor's rulings upon the demurrer, leads to an affirmance upon every point, except the one presented by the 10th assignment of errors. We understand the chancellor to decide, that England & Lee can receive no benefit in this case from the mortgage to them by Adolph Reis, and the sale under that mortgage This is put upon the ground, that England & Lee failed, on the hearing of the canse, to produce the mortgage, or bring forward proof in reference to the same.

The testimony is silent in reference to the mortgage; and the chancellor's position is correct, unless the mortgage is to be regarded as sustained by the state of the pleadings, between the complainants, on the one side, and England & Lee on the other. The bill alleges, that England & Lee had, on the —— day of ——, 1858, sold a certain lot, by virtue of some pretended *lien or claim* of title, for about five thousand and thirty dollars, and that they claim the money by virtue of their pretended lien or mortgage, and appropriate it to their own use. The bill further alleges, that the amount for which England & Lee sued out an attachment was a part of the debt which they *pretended* was secured by their *pretended* mortgage, and for the satisfaction of which they sold the lot under their *pretended mortgage, lien, or claim of title;* that they have no right to both the remedies by sale under the mortgage and by attachment; that the sum for which they sold the lot under the *pretended mortgage* was more than sufficient, if they have any just claim, to pay it; and that, upon correct accounting, they would be indebted to the complainants on account of the proceeds of the sale. These allegations may fairly be understood to make the somewhat contradictory assertions, that England & Lee had a mortgage or lien, under which they sold the lot; that it was pretended, not real; that the debts secured thereby were not *bona fide;* that they were discharged by the proceeds of the sale, and that there remained an excess in their hands.

It seems to us clear, that the answer of England, exhibiting a mortgage on the lot, with a power of sale, asserting the *bona fides* of the debts secured, and of the mortgage, and showing that a balance remained due upon the debts secured, after an appropriation of the proceeds of the sale, is responsive to the averments of the bill which we have noticed, and would be evidence against the complainants. This being the case, under the pleadings, England & Lee must be regarded as having shown a mortgage, older in date than the assignment which the bill sets up, and also *bona-fide* debts, secured by the mortgage, which were

satisfied only in part by the sale in pursuance of a power conferred by the mortgage. We decide, therefore, that the chancellor erred in treating the fund arising from the mortgage as assets subject to distribution among the creditors of Reis claiming under the assignment. We find no other error.

We deem it proper to remark, that no question as to the registration of the respective conveyances is raised in this case. If we were to look into that subject, it would not change the result.

Reversed and remanded.